## Lupin and others *vs.* Marie and Varet.

Where L. on the 24th August, 1826, sold to M. who was then in good credit, and supposed himself solvent, a quantity of goods, for which M. was to give his own notes without security, payable in six, seven, eight, nine and ten months; and the goods were delivered to M. and shipped by him for the West Indies on the 26th of August, 1826 and on the 4th of September thereafter, and before he had executed the notes M. stopped payment; and on the 9th of the same month M. assigned the goods to V. to secure him for a large sum of money, for which he was responsible as endorser for M.; and on the 5th September L. applied to M. for a re-delivery of the goods, and also afterwards, in the same month, claimed the goods from V., and both M. and V. refused to redeliver the goods to L., and M. and V. denied all fraud in the transaction, and V. denied all knowledge at the time of his purchase, of the conditions of the sale by L. to M. and also of the non-payment for the goods on the part of M.; it was held that the sale and delivery of the goods to M. was unconditional and valid, and was sufficient in law to change the property; that the assignment by M. to V. was also valid, and that L. had no lien on the goods for the purchase money due him from M.

The principle of stoppage in transitu does not apply to such a case; that right must be exercised, or an attempt made to exercise it before the goods reach the possession of the vendee.

If goods upon a sale thereof, are unconditionally delivered by the vendor to the vendee without any fraud on the part of the latter, the vendor can only look to the personal security of the vendee for the payment of the purchase money; he has no equitable lien for the same on the goods.

If the delivery of the goods is procured by the fraud of the vendee, the title will not pass to him, and the vendor can reclaim the goods if they have not passed into the hands of a bona fide purchaser.

A purchaser, however, from such fraudulent vendee, to secure antecedent debts or responsibilities, cannot hold the goods as against the vendor.

So, if the delivery of the goods was conditional, the title does not pass until the condition is performed.

But a bona fide purchaser without notice of the fraud will be protected, even in the case of a conditional delivery.

Where a merchant in good credit who knows himself to be insolvent, fraudulently conceals that fact from the vendor, and purchases goods without intending to pay for them, or for the purpose of assigning them to his confidential creditors, such sale may be set aside as fraudulent.

1830.

Lupin
v.
Marie.

In a case of great hardship, where the complainants had reason to suppose that the conduct of the defendants was fraudulent until they put in their answer, which fully explained the circumstances of the case, the court dismissed the bill without costs.

April 6th.

THE defendant J. B. Marie was a shipping merchant and importer of goods, residing in the city of New-York; and the complainants were merchants living in Paris, who carried on business in the city of New-York by an agent. Marie had for two or three years been in the habit of purchasing goods from his agent upon credit, and without giving security. On the morning of the 24th of August, 1826, the agent of the complainants called at the office of Marie, and sold to him 18 packages of goods, amounting to about 57,000 francs, for which sum the latter agreed to give his own notes, without security, payable in six, seven, eight, nine and ten months. At the time of the sale, Marie informed the agent that he intended to ship the merchandize to the West Indies. The goods were immediately delivered to Marie, and were by him shipped to the West Indies on the 25th or 26th day of August. At the time of the sale Marie was in good credit; but on the 4th of September thereafter, and before he had executed his notes for the goods, he failed. On the ninth of the same month he assigned to the defendant Varet, four several shipments of goods which had been made on the 15th of April, the 1st of June, and on the 9th and 26th of August previous. And in such assignment was included the merchandize purchased from the complainants. This assignment was made for the purpose of securing to Varet the payment of about sixty thousand dollars, for which he had become responsible, as the endorser for Marie and as his surety upon custom house bonds, &c. On the 5th of September, after Marie stopped payment, the agent of the complainants applied to him for a redelivery of the goods, and for an order for the goods upon the captain of the vessel in which they had been shipped. But Marie refused to redeliver the goods, and declined giving the order requested by the agent. On the 19th of September, the brig in which the goods were shipped put into Norfolk to repair. While the brig was in that port, Varet was informed by the agent that the com-

plainants claimed the redelivery of the goods ; but Varet also refused to make such redelivery, and directed his agent at Norfolk to re-ship them to himself at New-York. Varet, upon their arrival in New-York, sold the goods, and the net proceeds were about $7000. The complainants filed their bill in this cause, iusisting upon their right to either a redelivery of the goods, or to the payment of the original consideration agreed to be paid for them ; upon the ground that the purchase by Marie was fraudulent, and that the notes for the consideration money were not executed previous to the failure of Marie. The defendants denied all fraud in the transaction ; and Marie alleged that he had always been ready to execute the notes, but had never been requested to do it. Varet in his answer denied that at the time of the assignment to him he knew or suspected the conditions of the sale to Marie had not been complied with by him, or that the merchandize had not been paid for. And he insisted upon the validity of his title under the assignment from Marie ; and that the sale and delivery of the goods to Marie was valid and sufficient in law to change the property. The cause was heard on bill and answer.

*C. Graham & J. Talmadge*, for complainants.

*Charles Baldwin*, for the defendants.

THE CHANCELLOR. The principle of stoppage in transitu is wholly inapplicable to this case. Goods cannot be stopped or reclaimed unless the right is exercised, or there is a bona fide attempt made to exercise it before the property actually comes into the possession of the vendee. In this case the goods had come into the possession of the vendee, and had been shipped by him to the West Indies, and were on their way thither before his failure.

The vendor of real estate has, in many cases, an implied lien on the property sold, for the purchase money, where no express lien or other security is agreed upon by the parties. But there is no such lien on personal property, even as between vendor and vendee. If the goods are absolutely and unconditionally delivered, without any fraud on the part of

the vendee, the vendor can only look to his personal security for payment. (*Chapman* v. *Lathrop*, 6 Cowen's Rep. 110 ; 1 Greenl. Rep. 376.) If the delivery of the goods is obtained by the fraud of the vendee the title does not pass, and the vendor may reclaim the goods if they have not passed into the hands of a bona fide purchaser. In such a case the assignee to whom the goods have been assigned to secure antecedent debts or responsibilities, cannot hold them as against the seller. So also if the delilvery was not intended by the parties to be absolute, but conditional, the vendor does not part with his property until the condition is complied with. (4 Mass. Rep. 405. 6 John. Ch. Rep. 437. 4 Mason's Rep. 289. 1 Paige, 312.) But even in that case a bona fide purchaser who has no notice of the fraud will be protected. For where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the injury must sustain the loss.

It is not necessary in this case to decide whether it would be sufficient to avoid a sale as fraudulent if a merchant in good credit purchase goods upon his own responsibility, who knows himself to be insolvent at the time, but conceals that fact from the vendor. If he made the purchase under such circumstances, intending never to pay for them, or for the purpose of placing them in the hands of an assignee for the benefit of other creditors, there can be no doubt it would be such a fraud as would avoid the sale. But in this case it is evident that no fraud was intended. The goods were purchased on the 24th of August and shipped on the 26th. At that time Marie had no reason to suppose he was insolvent, although he was so in fact. From his answer, which has not been replied to and therefore must be taken as true, it appears he then supposed himself solvent, and actually paid $18,000 of his debts after the sale. Between that time and the day he stopped payment, several vessels arrived from abroad, bringing him intelligence of the failure of the house of Goldschmidt & Co. with which he had great commercial dealings, and of other heavy losses sustained in his commercial speculations elsewhere. These accumulated disasters compelled him to suspend his payments on the fourth of September.

I also think the delivery was not conditional and that it was not intended to be so by either party. The purchase was made at the solicitation of the complainant's agent and upon the personal responsibility of Marie alone. No security was required, nor was it supposed necessary. The agent knew the goods were to be immediately shipped for the Havana, and they were sent on board the brig for that purpose. Although notes were to be given for the purchase money, the liability of Maria would not have been changed by the giving of such notes. The agent no doubt took it for granted they would be given whenever called for. There was therefore no good reason why the delivery should be conditional, and I cannot believe either party so intended it. In *Smith* v. *Dennie*, (6 Pickering's Rep. 262,) where goods were sold to be paid for in an endorsed note on delivery, and the goods were the next day delivered by a clerk in the absence of the vendor and without any thing being said as to the condition, and the vendor neglected, for eight days, to call for the note, after which the goods were attached by another creditor, the condition was considered as waived.

It may undoubtedly be considered a very hard case that the goods of the complainants, sold so short a time before the failure, and which at the time of the failure remained in the original packages and under the control of the vendee, should, to the entire exclusion of the complainants, go into the hands of Varet to secure antecedent debts and responsibilities. But such is the settled law of the land ; and it is not in the power of this court to change it. The bill in this case must be dismissed ; but as the complainants had grounds to suspect fraud or collusion until the coming in of the answer, which fully explained the reason of the failure, I shall not charge them with costs.