AMASA C. HALL vs. CHARLES D. HINKS AND SAMUEL HINKS.

TITLE ACQUIRED BY CONSIGNEES, WHO MAKE ADVANCES UPON CONSIGNMENTS.—
Consignees who *bona fide* advance money, on the credit of consignments
made to them, upon bills of lading, acquire an interest in the property,
and are purchasers for value.

VENDOR AND VENDEE.—No act or declaration of a vendor of goods, after he
has parted with the property, can impair the rights of the vendee.

——: PURCHASER OF GOODS WITHOUT NOTICE.—Although as between the
original parties, a sale and delivery of goods obtained by fraud is void, and
may be rescinded at the election of the vendor, and the property reclaim-
ed from the fraudulent vendee, yet if they have passed into the hands
of a *bona fide* purchaser without notice, he takes a good title, which can-
not be impeached by the defrauded vendor.

A *bona fide* purchaser of goods, without notice of the condition upon which
his vendor has acquired the possession, will be protected against the claim
of the original vendor in the same manner, where the sale and delivery are
conditional, as where the possession has been obtained by fraud.

——: FRAUDULENT SALE.—If a party purchase goods for cash, and they are de-
livered to him upon the condition that he shall pay for them on delivery,
he perpetrates a fraud by selling them to another before complying with
the condition; but if the person to whom he sells deals with him in good
faith, ignorant of the secret defect in his title, and pays value, the inno-
cent purchaser ought to be protected against the claim of the original ven-
dor, who, by his own act, has enabled his vendee to perpetrate the fraud.

——: SALES UPON CONDITION, AND SALES PROCURED BY FRAUD.—There is no
distinction between a sale and delivery of goods on condition, where the
condition is not performed, and a sale and delivery procured by fraud; as
between the original parties to the contract, the vendee no more acquires
the title in the latter case than in the former; in such cases the principle,
"that a party having no title to property can pass none to others," does
not apply.

APPEAL from the Superior Court of Baltimore City.
This was an action of *replevin*, brought by the appellees
against the appellant, on the 22nd day of January 1857,
to recover possession of one hundred barrels of flour.
The facts are fully stated in the opinion of the Court.
At the trial, the plaintiffs offered three prayers:
The *first prayer* asked the Court to instruct the jury, that
if they should find the facts therein set forth in relation to
the sale of the flour, and the usage and custom claimed in

Hall *vs.* Hinks, et al.

regard to such sales, and should further find "that there was no unconditional delivery of said flour by the plaintiffs to the defendant, and no intention on the part of said plaintiffs, nor any agreement or understanding between the parties, that the said plaintiffs did, should, or would waive their right of property in said flour before payment of the price, or without payment of the price, and that the price for the same was never paid to the plaintiffs in whole or in part, and that payment thereof was called for and demanded by the plaintiffs on the day succeeding said sale, and for several successive days thereafter, and that a reasonable time had elapsed before this suit was brought for payment of said price; then in case the jury shall find the several matters aforesaid, as stated in this prayer, such receipt of said flour by the said Lyman Reed, and its delivery to him by the plaintiffs, did not divest the plaintiffs of their right of property in said flour as between them and the said Lyman Reed, and did not entitle the said Lyman Reed as between him and the plaintiffs, to retain possession of said flour as against the said plaintiffs, or to sell or to dispose of the same as his property, irrespective of the rights of the plaintiffs in or to said flour."

The *second prayer* asked the Court to instruct the jury, that if they should find the facts stated in the first prayer, and certain other facts as to the insolvency of Reed, and the drawing of the draft as stated in said prayer, and should further find "that the said Reed purchased said flour fraudulently, and obtained the delivery thereof as stated in the first prayer, for the fraudulent purpose of shipping the same and raising money on the credit thereof, and of appropriating the proceeds to other purposes than in payment for said flour, and that he knew that by such appropriation he would be unable to pay for the said flour, and that he had no reasonable expectation of paying therefor, then, as between the plaintiffs and said Lyman Reed, the delivery of said flour as stated in said first prayer, if found by the jury, did not divest the title of the plaintiffs to said flour,

or entitle the said Reed to retain possession of said flour as against the said plaintiffs, or to use or dispose of the same as his property, in disregard of the rights of said plaintiffs."

*Third Prayer.*—"If the jury find the facts set forth in the first and second prayers of the plaintiffs, and shall also find that the said one hundred barrels of flour mentioned in said first prayer, were delivered by said Reed to the defendant in this case, to be transported to New York, and that before the writ of replevin in this cause was issued, the plaintiffs offered to pay to the defendant all the charges which he, or the company for which he was acting as agent, had or claimed to have against or upon said one hundred barrels of flour, and that said defendant demanded and agreed to receive the sum of forty dollars in full of the charges and claim against or upon said flour, and that the said sum was paid by the plaintiffs to the defendant, under and in pursuance of said last mentioned agreement, then as between the plaintiffs and the defendant, the defendant had no interest in or lien upon said one hundred barrels of flour, nor any right to retain possession of the same from the said plaintiffs."

And the defendant asked the Court to instruct the jury:

"1st. That if they believe from the evidence that the flour in controversy was sold by the plaintiffs to Lyman Reed & Co., on the 13th of January 1857, and voluntarily delivered on the same day by the plaintiffs or their agent, to the said Lyman Reed & Co., or their agent, and that the agent of the said plaintiffs at the time of making such delivery, did, by direction of the plaintiffs, enquire of the said agent of Lyman Reed & Co., as to where the said flour was to be taken, and received for answer, that it was to be put on board the steamship Parker Vein, bound to New York; and if they further find that said flour was accordingly shipped on the same day by said Lyman Reed & Co., on board the said steamship for New York, to be delivered to Hicks and Hathaway, (the parties named in defendant's

fourth plea,) or their assigns, and that defendant was the authorized agent of the said ship and the owners thereof, and that said owners were the parties named in the defendant's third plea, and that the defendant by his clerk, Mr. Barnes, duly authorized therefor, did afterwards, on the same day, execute and deliver to the said Lyman Reed & Co., the bill of lading dated 13th January 1857, which has been offered in evidence; and if they further find that L. Reed & Co., did on the same day enclose and mail said bill of lading in the letter of the 13th of January 1857, offered in evidence, together with the invoice thereto annexed, to the said Hicks & Hathaway, and draw upon them as in said letter advised, the draft of the same date for $625, likewise given in evidence, and that said Hicks & Hathaway did receive the said letter, invoice and bill of lading, on the 14th of January 1857; and shall further find that said draft was sold, endorsed and delivered by said Lyman Reed & Co., on the same day to McKim & Co., for value, and that McKim & Co. in good faith purchased the same without any knowledge of any claim, pretension or demand of the plaintiffs whatever, and forwarded the same to New York for collection, and that the same was, on the 14th of January 1857, accepted by Hicks & Hathaway by their duly authorized agent, and paid at maturity, and that Hicks & Hathaway accepted said draft in good faith, without notice of any claim, pretension or demand whatsoever of said plaintiffs in the premises, and upon the faith and security of said bill of lading, and the letter and invoice enclosing the same, and of the consignment and shipment to them of the very flour in question, and as an advance thereupon, the plaintiffs are not entitled to recover."

"2nd. That if the jury believe from the evidence the facts set forth in the defendant's first prayer, they have no right to consider, in making up their verdict, as to the defendant's sixth and eighth pleas, any statements or admissions of Lyman Reed, as to the terms of the sale, or his means, &c., which they may find from the evidence to have

Hall *vs.* Hinks, et al.

been made after January 14th, 1857, the same having been received only subject to exception, and being inadmissible and incompetent as evidence against the defendant upon the matter of the said pleas."

"3rd. That even if the jury shall find, according to the hypothesis of the plaintiffs' first prayer, the plaintiffs are still not entitled to recover, if the jury shall find the facts set forth in the defendant's first prayer."

"4th. That even if the jury shall find, according to the hypothesis of the plaintiffs' second prayer, the plaintiffs are still not entitled to recover, if the jury shall find the facts set forth in the defendant's first prayer."

The Court, (LEE, J.,) granted the plaintiffs' prayers, and rejected those of the defendant, and the defendant appealed.

The cause was argued before BOWIE, C. J., and BARTOL and GOLDSBOROUGH, J.

*S. Teackle Wallis* and *Oliver Miller,* for the appellant:

1st. The delivery of the flour by the Messrs. Hinks to Reed, being voluntary, the facts stated in the defendant's first prayer, if found by the jury, constituted Hicks & Hathaway *bona fide* purchasers from Reed, without notice, and as between them and the Messrs. Hinks, the right to the flour passed to the former, and the title so acquired by them will be protected; the latter therefore cannot recover in this action, no matter whether, as between Hinks and Reed, the delivery may have been conditional under the usage, or whether the delivery was obtained by such means and for such purposes, and with such intent on the part of Reed, as would render the transaction fraudulent as between Hinks and Reed, so that either the property and title, as between them, did not pass, or Hinks had the right to avoid the contract as against Reed by reason of the fraud of the latter. This is a well settled doctrine of commercial law, sustained by abundant authority. *Powell vs. Bradlee,* 9 *G. & J.,* 220. 2 *Kent,* 641, to 643, *(top,)* (7th

*Edition.*)   *Hussey vs. Thornton*, 4 *Mass.*, 405.   *Hoffman vs. Noble*, 6 *Metcalf*, 68.    *Haggerty vs. Palmer*, 6 *Johns. Ch. Rep.*, 473.    *Root vs. French*, 13 *Wend.*, 570.    *Smith vs. Lynes*, 1 *Selden*, 41.   *Covill vs. Hill*, 4 *Denio*, 323.    *Dows vs. Greene*, 16 *Barb.*, 72.    *Caldwell vs. Bartlett*, 3 *Duer*, 341.  *Keyser vs. Harbeck*, 3 *Duer*, 373.   *Gibson vs. Stevens*, 8 *How.*, 384.    *Grove vs. Brien*, 8 *How.*, 429.    *Lawrence vs. Minturn*, 17 *How.*, 100.    *Conrad vs. Atlantic Ins. Co.*, 1 *Pet.*, 445.  *The Mary Ann Guest*, 1 *Blatchford*, 358.   *Id.*, *Olcott*, 501.    *Kingsford vs. Merry*, 34 *Eng. Law & Eq. Rep.*, 607.    *Tindall vs. Taylor*, 82 *Eng. C. L. Rep.*, 228. *Stevenson vs. Newnham*, 16 *Eng. Law & Eq. Rep.*, 401. *Buck vs. Grimshaw*, 1 *Edw. Ch. Rep.*, 140.    *Keeler vs. Field*, 1 *Paige*, 315.   *Lupin vs. Marie*, 2 *Paige*, 172.   *Van Cliff vs. Fleet*, 15 *Johns.*, 151.   *Allison vs. Matthieu*, 3 *Johns.*, 233.    *Bristol vs. Wilsmore*, 1 *Bar. & Cres.*, 514. *Harris vs. Alcock*, 10 *G. & J.*, 246.    *Beavers vs. Lane*, 6 *Duer*, 232.    *Miller's Appeal*, 30 *Penn. State Rep.*, 478. *Noble vs. Adams*, 7 *Taunt.*, 59.  *Mowrey vs. Walsh*, 8 *Cowen*, 245.    *Parson's Mer. Law.*, 55, 56.    *Story on Sales, sec.* 313.    *Duncan vs. McCullough*, 4 *Searg. & Rawle*, 487. *Smith's Mer. Law*, 54, 55.    *Martin vs. Mathiot*, 14 *Searg. & Rawle*, 214.

2nd. By the plaintiffs' first and second prayers the jury are told, that if they find the facts therein respectively stated, then as between the plaintiffs and Reed, the delivery did not, (in the one prayer,) "divest the plaintiffs of their right of property in said flour," and (in the other) "did not divest the title of the plaintiffs to said flour;" nor (in each) "entitle the said Reed to retain possession of said flour as against the said plaintiffs;" "or" (in the one) "to sell or dispose of the same as his property irrespective of the rights of the plaintiffs in or to said flour," "or" (in the other) "to use or dispose of the same as his property, in disregard of the rights of said plaintiffs." These clauses of the prayer are calculated to confuse, bewilder and mislead the jury, and the prayers for this reason are defective.

3rd. If the position assumed in our first point is correct, then, upon the authorities there cited, it will be seen that the plaintiffs' third prayer is defective, and should not have been granted.

4th. Any statements or admissions of Reed, made after January 14th, 1857, and therefore after the sale, and after the flour had been delivered and shipped, the bill of lading signed, and it with the invoice and draft sent on to Hicks & Hathaway, and the draft accepted by them, are inadmissible to affect the right of possession of the flour, thereby vested in the defendant, and in Hicks & Hathaway. The defendant's second prayer, should therefore have been granted.

*William Schley,* for the appellees:

1. A contract of sale "for cash" is synalagmatic, not merely in its obligations, but in its performance. Delivery and payment are reciprocal duties; and the vendee acquires no right of possession, as against the vendor, without payment, or tender or waiver of payment, as by an unconditional delivery. *Bloxam vs. Sanders,* 4 *Barn. & Cres.,* 941, (10 *Eng. Com. L. Rep.,* 477.) *Powell vs. Bradlee,* 9 *Gill & Johns.,* 277, 278. *Marston vs. Baldwin,* 17 *Mass.,* 610. *Lucy vs. Bundy,* 9 *N. H.,* 301. *Furniss vs. Hone,* 8 *Wend.,* 258.

2. Upon the hypothesis of the first prayer, the delivery would not be a waiver. Contracts made, with reference to the usage of the trade, and acts done, with reference to such usage, are to be interpreted thereby. *Powell vs. Bradlee, ut supra.*

3. The plaintiff's second prayer introduces, in its hypothesis, the ingredient of fraud, in promising the delivery of the flour. Possession, thus acquired, would be unavailing. *Hawse vs. Crowe, Ryan & Moody,* 414, (21 *Eng. C. L. Rep.,* 477.) *Ratcliffe vs. Sangston,* 18 *Md. Rep.,* 390. *Coggill vs. Hartford & New Haven R. R. Co.,* 3 *Gray,* 545.

4. Payment to defendant of his asserted lien, was an ab-

solute extinguishment of his right to detain the flour. *Cross on Lien*, 28, (34 *Law Lib.*, 37.) *Yorke vs. Greenaugh*, 2 *Ld. Raym.*, 867. 1 *Parson's Maritime Law*, 350.

And even if the defendant's alleged right of retainer of the flour, be considered as made in his capacity, as agent, in behalf of the carrier, still the mere fact, that the flour was shipped on board, deliverable to Hicks & Hathaway, and that a bill of lading had been made accordingly, and had been delivered, did not oblige the carrier, nor entitle him to resist the claim of the real owner. *Story on Bailments*, secs. 120, 266, 281, 582. *Wilson vs. Anderton*, 1 *Barn. & Adol.*, 450, (20 *Eng. C. L. Rep.*, 426.) *Ogle vs. Atkinson*, 5 *Taunt.*, 759, (1 *Eng. C. L. Rep.*, 255.) *Craven vs. Ryder*, *Holt*, 100, (3 *Eng. C. L. Rep.*, 40,) and reporter's note there. See also reporter's note in 3 *Eng. C. L. Rep.*, 10, as to right of stoppage in *transitu*. See the same case of *Craven vs. Ryder*, 5 *Taunt.*, 433, in 1 *Eng. C. L. Rep.*, 439. *Litt vs. Cowley*, 1 *Holt*, 338, (3 *Eng. C. L. Rep.*, 122.) 7 *Taunt.*, 169, (2 *Eng. C. L. Rep.*, 64.) *King vs. Richards*, 6 *Whorton*, 421. *Bates vs. Stanton*, 1 *Duer*, 79.

5. As between the plaintiffs and Hicks & Hathaway, the latter can have no right of possession, if Reed had no such right of possession. They must claim under Reed—in right of Reed—possession of the flour, as his flour. They have no right superior to his. They have no independent right, under the facts assumed, as consignees, or as factors, or as persons who had lent to Reed their credit. The bill of lading, as to this point, was inofficious and inoperative, as against the plaintiffs. The maxim applies: *nemo potest in alienum transferre plus quam ipse habet*. *Gurney vs. Behrend*, 3 *Ellis & Bl.*, 622. *Id.*, 25 *Law & Eq. Rep.*, 128. *Everett vs. Saltus*, 15 *Wend.*, 474. *Saltus vs. Everett*, 20 *Wend.*, 267, 272. 1 *Parson's Maritime Law*. 358, &c., and notes. *Coggill vs. Hartford R. R. Co.*, 3 *Gray*, 548. *Gilbert vs. Thompson*, 3 *Gray*, 550.

6. The declarations of Reed as given in evidence, when he was called on for payment, were admissible as part of

the *res gestœ.* Even if not admissible, they were not injurious upon the issues specified.     *Kolb vs. Whitely,* 3 *G. & J.,* 188.     *Thomas vs. Denning,* 3 *H. & J.,* 242.     *Garner vs. Smith,* 7 *Gill,* 3.     *Handy & Tull vs. Johnson,* 5 *Md. Rep.,* 450.     *McDowell vs. Goldsmith,* 6 *Md. Rep.,* 329, and 2 *Md. Ch. Dec.,* 370.     *Coale vs. Harrington,* 7 *H. & J.,* 147.

BARTOL, J., delivered the opinion of this Court:

This was an action of *replevin* for one hundred barrels of flour, instituted by the appellees against the appellant. The defendant below pleaded eight pleas, denying the plaintiffs' title and right of possession, claiming the right of possession in himself, and setting up title and right of possession in Hicks & Hathaway of New York.

The material facts contained in the bill of exceptions are, that on the 13th of January, Lyman Reed, who conducted business in Baltimore, under the name of Lyman Reed & Co., purchased the flour in controversy from the plaintiffs; on the same day the flour was delivered by Orme, the clerk of the plaintiffs, to the draymen employed by Reed, and upon his written order, and carried for shipment on board the steamship "Parker Vein," of Cromwell's line of steamers, plying between Baltimore and New York, then lying at her wharf near the warehouse of Reed.

The flour was marked before leaving the plaintiffs' warehouse with the letters H. & H., the initials of Hicks & Hathaway; and Orme having been directed by the appellees to ask the drayman where he was going to take the flour? was informed that it was to be shipped on board the Parker Vein. The purchase was made before eleven o'clock, A. M. The same day Reed received from the appellant as agent of the steam ship, a bill of lading of the flour as consigned to Hicks & Hathaway, New York, and sent it the same day to the consignees, with an invoice, advising them that he had drawn on them for $625, at fifteen days sight. The draft was cashed by McKim & Co., bankers in Baltimore, forwarded to New York, and on the following day,

the 14th January, was accepted by Hicks & Hathaway, and paid by them at maturity.

The flour was sold on change by the appellees to Lyman Reed & Co., without any express stipulation with regard to the time or mode of payment; but evidence was offered to prove that by the established usage and custom among flour dealers in Baltimore, sales of flour made on change, are understood to be for cash, unless otherwise expressly agreed. Proof was also given that by the same usage and custom, flour is delivered to the purchaser immediately, or whenever he may call for it, without thereby changing the terms of sale from cash to credit. With reference to the time of demanding payment the custom is not established, or uniform; all the witnesses agree in saying that it is the right of the vendor to call for the money immediately on the delivery, but unusual to do so,—as some of the witnesses said, "to do so would be uncourteous,"—the custom being, according to the testimony, to demand the money on the next day, or within a few days; two, three, four, or as many as ten days sometimes elapsing, before payment is demanded.

In this case the appellees' clerk presented the bill, and demanded payment on the next day, and called three or four times afterwards; the last time Reed offered his own note in payment, which the clerk did not accept. The harbor being closed by ice, the steamer was detained in port, until the latter part of February, and Reed having failed to pay for the flour, and being unable to meet his engagements, on the 22nd day of January, after the appellees had demanded the possession of the flour, they sued out the writ of *replevin* in this case, by virtue of which the flour was taken from the possession of the appellant, who claimed and received $40 in full of charges due the steamer on the shipment.

The evidence also shows that Lyman Reed & Co., had purchased from the appellees several lots of flour previously, for which payment had been promptly made, and that in those transactions the flour had been delivered in the same

way as in the one now in dispute; and it was further proved that in this case the shipment was made in the usual routine of business, and in the transmission of the invoice, bill of lading and draft, nothing was done out of the ordinary way of conducting such transactions, and but for the accidental detention of the steamer by the state of the harbor, the flour would have gone forward.

The real question in the case being between the appellees and Hicks & Hathaway, it is material to state that there is no evidence to prove that these last had any knowledge of the terms or conditions upon which Lyman Reed purchased the flour, or received it into his possession, or that they had any knowledge of the usage and custom existing among flour dealers in Baltimore, spoken of in the testimony; Reed's draft was accepted and paid by them, in the usual course of their dealing with him, and on the faith of the consignment evidenced by the invoice and bill of lading.

Under these circumstances it is clear, that Hicks & Hathaway occupy the position of *bona fide* purchasers, entitled to the rights and the protection which by the law is secured to parties standing in that relation.

There can be no doubt, upon all the authorities, that consignees, who *bona fide* advance money on the credit of consignments made to them upon bills of lading, acquire an interest in the property, and are purchasers for value. This was expressly ruled in *Dows vs. Green*, 16 *Barbour*, 72.

Persons so situated are within the definition of *bona fide* purchasers, to be found in *Root vs. French*, 13 *Wend.*, 572, *Beavers vs. Lane*, 6 *Duer*, 240, and were so recognized by the Court of Appeals in *Powell vs. Bradlee*, 9 *G. & J.*, 221, and *Ratcliffe vs. Sangston*, 18 *Md. Rep.*, 390. See also *Gibson vs. Stevens*, 8 *Howard*, 384, and *Grove vs. Brien*, 8 *Howard*, 429.

It being established that Hicks & Hathaway are *bona fide* purchasers from Reed, without notice of the manner in which he acquired possession, we proceed to consider

Hall *vs*. Hinks, et al.

what effect upon their title is produced by the circumstances and conditions attending the sale and delivery of the flour by the appellees to Reed.

For the purposes of this question we assume, first, that there was evidence from which the jury could find that the delivery was obtained by Reed fraudulently; and secondly, that the sale and delivery was, under the usage, merely conditional and not absolute, vesting as between those parties, no title in Reed till the money was paid, and leaving in the appellees, the vendors, the right to reclaim the property from him, upon his failure to pay the money on demand.

This is the utmost that can be claimed as the effect of the usage, supposing it to govern the contract. And upon an examination of all the authorities cited, and referred to on both sides, as well as upon the soundest principles of reason and justice, which lie at the foundation of commercial law; we are of opinion that the title passed to Hicks and Hathaway, and will be protected against the claim of the appellees. We think the rule of law governing such a transaction is correctly stated in the first point of the appellant's printed brief.

The title of Hicks and Hathaway is assailed upon two grounds, both of which will now be examined.

First. As to the effect of the alleged fraud on the part of Reed in obtaining the possession. All the authorities agree that although as between the original parties a sale and delivery of goods obtained by fraud, is void, and may be rescinded at the election of the vendor, and the property reclaimed from the fraudulent vendee; yet if they have passed into the hands of a *bona fide* purchaser without notice, he takes a good title, which cannot be impeached by the defrauded vendor. It is not necessary to cite authorities in support of this proposition, we have said there is no conflict upon this question, and the principle has been recognized by the Court of Appeals expressly in *Powell vs. Bradlee*, and incidentally in *Ratcliffe vs. Sangston*.

53      v. 21

This rule rests upon the well established principle of equity, "that when one of two innocent persons must suffer by the fraud of a third, the loss shall fall upon him, who has enabled such third person to do the wrong." See *Lupin vs. Marie*, 2 *Paige Rep.*, 172.

Second. As to the effect of the condition under which the sale and delivery was made to Reed, supposing the contract to have been made with reference to the custom. An examination of the authorities, and a careful consideration of the subject, have led us to the conclusion that the same rule applies; and that a *bona fide* purchaser, without notice of the condition upon which his vendor has acquired the possession, will be protected against the claim of the original vendor, in the same manner where the sale and delivery are conditional, as where the possession has been obtained by fraud. It seems to us, the same equitable principle lies at the foundation of the rule, and is equally applicable to both classes of cases.

If a party purchase goods for cash, and they are delivered to him upon the condition that he shall pay for them on delivery, he perpetrates a fraud by selling them to another before complying with the condition; but if the person to whom he sells deals with him in good faith, ignorant of the secret defect in his title, and pays value, it is difficult to see why, upon the principle before stated, the innocent purchaser ought not to be protected against the claim of the original vendor, who, by his own act, has enabled his vendee to perpetrate the fraud. This view is consistent with the general current of the authorities, and supported both by the adjudicated cases and the elementary writers. See 2 *Kent's Com.*, 642, 643, (*7th Ed.*) *Story on Sales*, sec. 313. *Hussey vs. Thornton*, 4 *Mass.*, 405. *Lupin vs. Marie*, 2 *Paige*, 172. *Covil vs. Hill*, 4 *Denio*, 327. *Beavers vs. Lane*, 6 *Duer*, 232; and many others might be cited.

In the case of *Coghill vs. Hartford & New Haven R. R. Co.*, 3 *Gray*, 545, decided in 1855, the Supreme Court of

Massachusetts held the contrary, supporting their judgment by an able opinion delivered by Judge Bigelow. In that case the Court determined, that where goods were sold and delivered on condition, the title did not pass from the vendor till the condition was performed, and he might reclaim them, even from a *bona fide* purchaser who took them without notice of the condition. This is the only case cited in which this proposition has been distinctly asserted, and with the greatest respect for that learned Court, we cannot assent to their conclusion. In our opinion the cases cited by the learned judge do not support the views expressed by him, while the contrary doctrine has been laid down by numerous authorities, to some of which we have referred.

In one part of the opinion the case is treated by Judge Bigelow as one "not depending on authority, but to be determined on just and sound principles." If we were at liberty to consider the question as an open one, we should still dissent from the reasoning of the learned judge.

We have said that the rule is well established, that a *bona fide* purchaser from a vendee who has procured possession of the goods by fraud, is protected against the claim of the original vendor. This principle is recognized and adopted by the Court in 3 *Gray*, and their decision rests entirely upon a supposed distinction between such a case, and the case of a sale and delivery of goods on condition. In the soundness of this distinction we do not concur.

In the view of Judge Bigelow, this distinction is based upon the proposition, that "by a sale and delivery of goods procured by fraud, the property passes, because such is the agreement and intent of the parties, and therefore the vendee having the property as well as the possession of the goods, can pass a good title to a purchaser who takes the goods in good faith, and without notice of the fraud." * * * "But in the case of a conditional sale and delivery, the title does not pass from the vendor until the condition is fulfilled. The vendee obtains no right under such sale to

dispose of the property, but only to hold it until the terms are complied with." *White vs. Garden,* 10 *C. B.,* 919.

The case of *White vs. Garden,* does not sustain the distinction here taken, nor have we seen any case which asserts that a party can acquire, as against his vendor, any title to goods under a sale and delivery procured by fraud. Such a contract is void, and no rights are acquired under it by the vendee. It is true that it is at the election of the vendor to treat the contract as void, and reclaim the goods; or he may hold the vendee bound by it, not because the fraudulent contract is valid *per se* and sufficient to pass the title, but because, by the principles of law, which forbid a party from taking advantage of his own fraud, the vendee is precluded from impeaching the contract on that ground. The supposed distinction therefore between a sale and delivery of goods on condition, where the condition is not performed, and a sale and delivery procured by fraud, does not in reality exist as between the original parties to the contract; the vendee no more acquires the title in the latter case than in the former. In support of this view see *Root vs. French,* 13 *Wend.,* 572. *Lupin vs. Marie,* 2 *Paige,* 172, and *Parsons on Mer. Law,* 55, 56. These authorities also show, that to these cases the principle, "that a party having no title to property can pass none to others," does not apply. We conclude, therefore, both upon reason and authority, that the rule of law which secures protection to a *bona fide* purchaser, who has dealt in good faith with a fraudulent vendee having the possession, applies with equal force to a case where the original sale and delivery are made subject to conditions of which he is ignorant. We are unable to draw any distinction, either in reason or upon grounds of public policy, between the two classes of cases.

In the case of *Copeland vs. Bosquet,* 4 *Wash. Cir. Ct. Rep.,* 594, referred to by the Court in 3 *Gray,* and which goes farther in support of their judgment than any other cited, Mr. Justice *Washington* uses this language: "If the possession be delivered by the real owner, together with

the usual *indicia* of property, or under circumstances which may enable the vendee to impose himself upon the world. as the real owner; this might be a case of constructive fraud, which would postpone, even at law, the right of the real owner, in favor of a fair purchaser without notice, and for a valuable consideration."

This principle, although not positively asserted by the learned judge, we think is correct, and altogether applicable to this case.

It follows from the views above expressed, that the first, third and fourth prayers of the appellant are correct, and ought to have been granted; and for the same reasons there was error in granting the first and second prayers of the appellees. These last we construe as asserting the proposition, that upon the hypothesis of facts contained in the prayers, Lyman Reed could not sell and dispose of the flour so as to pass a good title to his vendees, as against the plaintiffs, and so construed the prayers are erroneous. The counsel for the appellees contended that they were not susceptible of this construction; but upon looking at the words of the prayers it is manifest, that an instruction that Lyman Reed was not entitled "to sell or dispose of the same as his property, irrespective of the rights of the plaintiffs in or to said flour, was equivalent to an instruction that parties purchasing from him could acquire no title under any circumstances, and was calculated to mislead the jury. The third prayer of the appellees was also erroneously granted, because it ignores the rights which the appellant had to retain the property as bailee of Hicks & Hathaway, in the event of the jury finding the facts contained in the appellant's first prayer, which, as we have said, would constitute Hicks & Hathaway *bona fide* purchasers, and entitle them, or their bailee, to the possession of the flour, against the claim of the appellees.

We are also of opinion that the appellant's second prayer ought to have been granted; the evidence therein referred to was inadmissible, and having been taken subject to exception, ought to have been excluded, as it was cer-

tainly incompetent for the appellees to impeach or affect the rights of Hicks & Hathaway by any declarations of Reed, made after he had parted with the property, by the shipment, and the transmission of the invoice and bill of lading to Hicks & Hathaway, and their acceptance of the draft. No act or declaration of Reed subsequently made could impair their rights thus acquired.

*Judgment reversed, and procedendo ordered.*

(Decided May 27th, 1864.)