CLARENCE DIAS *vs.* CHARLES F. CHICKERING, and GEORGE H. CHICKERING, trading as CHICKERING & SONS.

*Replevin of Piano—Bona fide Purchaser without Notice.*

C. consigned a piano to B. & E., a firm, who were authorized to sell it for cash. This piano with the assent of E. was removed to the residence of B. for private use, and after remaining there for nine or ten months, was sold by B. as belonging either to himself or to his wife, to D. for two hundred and fifty dollars, a fair price at the time. D. paid the money to B., taking a receipt therefor. D. was a *bona fide* purchaser, without notice of the relations between the firm of B. & E. and the consignor C., and unaware that either B. or the firm was in any financial trouble. In an action of replevin brought by C. against D. to recover the piano, it was HELD:

That the defendant being an innocent purchaser for value, took a good title to the piano, and the plaintiffs were not entitled to recover.

APPEAL from the Superior Court of Baltimore City.

This was an action of replevin brought by the appellees to recover a piano from the appellant. The case is stated in the opinion of the Court.

*Exception.*—The plaintiffs offered three prayers which were rejected. The defendant offered the following prayers:

1. That in order to enable the plaintiffs to recover, it is incumbent upon them to prove, either that the title to the piano in controversy, or the right to the possession thereof, is in them, the plaintiffs, and there is no evidence of either of these facts.

2. That if the jury, find from the evidence before them, that the plaintiffs consigned the piano in controversy to the firm of Buckland and Ebeling for sale, and that Buck-

land, one of the members of said firm, and while a member of said firm, sold said piano to the defendant Dias, and that the said Dias purchased the same in good faith and for a valuable consideration, then the plaintiffs are not entitled to recover.

3. That if the jury find from the evidence before them, that the plaintiffs consigned the piano in controversy to the firm of Buckland and Ebeling, as their agents, for sale, and that by an arrangement between said Buckland and Ebeling, the said Buckland purchased said piano from said firm of which he was a member, and that in pursuance of said purchase the said piano was sent, on or about the 28th of June, 1882, from the warerooms of the said Buckland and Ebeling to the private residence of the said Buckland, where it remained for a period of about ten months, and was then purchased by the defendant Dias, who in good faith paid a valuable consideration therefor, then the plaintiffs are not entitled to recover.

4. That the Court instruct the jury to exclude from their consideration the entries in the books of the firm of Buckland and Ebeling, which were made and written by Ebeling, and which were offered in evidence by the plaintiffs subject to the exception of the defendant.

The defendant moved the Court to exclude from the consideration of the jury the evidence of the entries made by the witness Daniel in the books of Buckland and Ebeling, the said evidence being admitted subject to exception on the part of the defendant.

The Court (BROWN, C. J.,) rejected the prayers and overruled the motion of the defendant, and gave an instruction of its own, as follows:

According to the undisputed evidence in this case, the plaintiffs consigned the piano in question to the firm of Buckland, Ebeling & Co., as their agents, for sale, and the defendant has failed to show that Charles C. Buckland, who was a member of said firm, and who claimed to be

the purchaser of said piano from said firm, and who sold
the same to the defendant, acquired any title thereto un-
der said pretended sale, and said Buckland therefore con-
veyed no title to the defendant; and the defendant has
also failed to show that the title of the plaintiffs to said
piano has in any way been divested, and the Court there-
fore instructs the jury that on the undisputed evidence in
the case the plaintiffs are entitled to recover.

The defendant excepted to the rejection of his prayers,
and the verdict and judgment being against him he took
this appeal.

The cause was argued before ALVEY, C. J., STONE, MIL-
LER, ROBINSON, RITCHIE, and BRYAN, J.

*Isidor Raynor,* for the appellant.

A trustee purchasing from his *cestui que trust;* an agent
from his principal; a fraudulent vendee, all take titles
that can be avoided in equity, but the purchaser from them
in *good faith for value and without notice of the trust, or
the fraud,* takes an unimpeachable title.    Benjamin, Story,
and, in fact, all the text writers, are of one accord upon this
elementary principle, and this Court has sanctioned it in
a manner which withdraws it from the pale of controversy
in this State.    *Hall vs. Hinks, et al.,* 21 *Md.,* 417; *Hoff-
man Steam Coal Co. vs. Cumberland Coal and Iron Co.,* 16
*Md.,* 511; *Williams' Ex'rs vs. Marshall,* 4 *G. & J.,* 380;
*Story on Agency,* (*8th Ed.,*) *ch. VII, page* 261, *sec.* 211,
note 1, and cases referred to in note; *Perry on Trusts,* (*2d
Ed.,*) *ch. VI, sec.* 218; *ch. XXVII, sec.* 828; *Benjamin on
Sales,* (*1st Am. Ed.,*) *book 3d, part 2d, sections* 2 *and*
433, and note 1; *Story's   Equity Jurisprudence,* (*12th
Ed.,*) *secs.* 381, 434; *Wharton's Commentaries on Agencies
and Agents, ch. 3d, sec.* 201.

*If the sale to Buckland was void,* then the title of the
piano remained in Buckland, Ebeling & Co., as the agents

of the appellees, and Buckland being a member of the firm, had obviously the right to sell the piano. It is difficult to see any escape from this proposition. Dias had a right to purchase pianos, the whole stock if he wanted to, from either member of the firm; that was the business of the firm. If Buckland, as the Court seemed to think, could not pass title to Dias through the medium of the sale to him, Buckland, he certainly could pass title as one of the members of the firm of Buckland, Ebeling & Co., the piano having been consigned to them for sale. Now the view that the Court took upon the question, was, that the sale, having been made at Buckland's residence, and not at the place of business of the firm, it did not pass title. If an agent has the right to sell, he has the right to sell anywhere. The power of sale being admitted, the *place* of sale cannot affect the title.

The Court seemed to consider that under the provisions of what is known as the factor's Act, Article 3, section 4, of the Code, the sale was inoperative, unless made at the place of business of the firm. This Act, which is substantially the English Act of 4 Geo. 4, ch. 83, 6 Geo. 4, ch. 94, and 5th and 6th Vict., ch. 39, does not bear upon this question. That Act was passed to *enlarge* and not to *restrict*, the powers of an agent at common law. Its objects was to protect purchasers from parties who had no *power of sale*, but were only *entrusted* with the property, and had the *indicia* of ownership. In this case there was a *power of sale*, and a *right to receive the money.* If the appellant, in good faith, for value, had bought this piano *at any place whatever* from any member of the firm, his title would be indefeasible. *Levi vs. Booth,* 58 *Md.*, 306.

The Court was in error in permitting the entries in the books of the firm of Buckland, Ebeling & Co., which were *made and written by Ebeling,* to go to the jury, and in rejecting appellant's fourth prayer, which asked that these entries should be excluded. An entry made by a party

himself in his shop books is not evidence in Maryland. *Romer vs. Jaecksch,* 39 *Md.,* 585; *Owings & Piet vs. Low,* 5 *G. & J.,* 145; *Atwell vs. Miller & Mayhew,* 6 *Md.,* 10; *Whiteford vs. Buckmeyer & Adams,* 1 *Gill,* 140; *Hagan vs. Hendry,* 18 *Md.,* 190.

*B. Howard Haman,* for the appellees.

As between the plaintiffs and their agents, Buckland, Ebeling & Co., the title to the piano in question was in the former. 1 *Benjamin on Sales,* (*Am. Ed.,*) 8; *Bayliss vs. Davis,* 47 *Ia.,* 340, *same report, page* 363; *Cole vs. Mann,* 62 *N. Y.,* 1.

The Judge below instructed the jury that there was no evidence in the case tending to show that the plaintiffs' title had been divested. This instruction was correct, for the plain reason that Mrs. Buckland, the defendant's vendor, had herself no title to the piano in controversy, and consequently could give none to the defendant.

There is a sharp distinction between the legal effect of a sale of goods where the title of the vendor to the thing sold is *void,* and where it is *voidable* only. Though A's title be defective through fraud of his, and therefore voidable by his vendor, he still has enough title in himself to pass to an innocent purchaser for value an indefeasible interest in the thing sold. *Hall vs. Hinks,* 21 *Md.,* 406. If on the other hand, A's title is *void,* he can give no title to the most innocent purchaser. *Ramazotti vs. Bowring,* 7 *C. B. N. S.,* 851; *Sheridan vs. The New Quay Company,* 4 *Com. Bench,* (*N. S.,*) 617.

Mrs. Buckland's title to the piano in controversy was absolutely void. There is no question but that Chickering & Sons might have replevied the piano from her at any time. Admitting that her husband's title was defeasible merely, and not void, she could take no title from him, since she paid nothing for the piano. *It was a present,* and she has no equity, as a purchaser has. Neither

an execution creditor of a fraudulent vendee, (*Buffington vs. Gerrish*, 15 *Mass. R.*, 156,) nor a purchaser from a fraudulent vendee who gives a past debt, (*Radcliff vs. Sangston*, 18 *Md.*, 383,) gets a good title.

Mrs. Buckland's title to the piano was void, for the further reason that the transfer to her by her husband, was inoperative, as in fraud of his creditors, and the appellant was put upon notice of that fact. *Green vs. Early*, 39 *Md.*, 223.

All the prayers of the defendant were defective in not leaving the question to the jury, whether the sale was made in the due course of trade. *Higgons vs. Burton*, 26 *L. J. Exch.*, 342; *Baines vs. Swainson*, 32 *L. J. Q. B.*, 281; *Booth vs. Levi*, 58 *Md.*, 325.

*Bare possession* of goods by an agent is not enough to enable him to divest the title of his principal by a fraudulent sale, even to an innocent purchaser. *Andrew vs. Dietrich*, 14 *Wendell*, 41; *Leigh Bros. vs. R. R. Co.*, 58 *Ala.*, 179; *McNeill vs. The Bank*, 46 *N. Y.*, 330.

Ritchie, J., delivered the opinion of the Court. ·

The uncontroverted testimony in this case shows that Buckland & Ebeling were a firm engaged in selling pianos of their own, and also on consignment from other parties, among whom were the appellees; that the piano replevied in this case was one they had received from the appellees, and that they were authorized to sell it for cash, and when sold their duty was to transmit the proceeds to the appellees; that this piano was, with the assent of Ebeling, removed to the residence of Buckland for private use, and after remaining there for nine or ten months was sold by Buckland, as belonging either to himself or wife, to the appellant, whose business was that of a dealer in furniture, for two hundred and fifty dollars, a fair price at the time; that appellant paid the money to Buckland, taking his personal receipt, and was a *bona fide* purchaser, without

notice of the relations between the firm of Buckland and Ebeling and the appellees, and unaware that either Buckland or the firm was in any financial trouble; a fact which he learned through the newspapers several days after the purchase.

The controverted evidence was on the point of whether Buckland, when the piano was removed to his home, nine or ten months before the sale, had bought it, or merely borrowed it; Buckland testifying that he had bought it, directing it to be charged to his account, and Ebeling that it was merely lent to him.

In our view of the effect of the undisputed evidence, it is immaterial in this case whether Buckland had bought the piano from the firm, or only borrowed it. The question is not whether Buckland had actually acquired title to the piano in himself as between him and the Chickerings; but whether under all the facts and circumstances disclosed in the undisputed proof, Dias is to be protected, as an innocent purchaser for value, against the principals of Buckland and Ebeling. In our opinion he is clearly so entitled.

Assuming that Buckland had not purchased the piano himself in fact, or that having undertaken to buy it, his character as agent rendered such a purchase voidable in law; he was, nevertheless, as one of the firm of Buckland and Ebeling, put in possession of the piano and specifically clothed with the power to sell it for cash to any outside party. Such a sale he actually did make; he sold the piano for cash and received the money; and assuming the ownership of the property not to be in him, he should have transmitted the proceeds to the Chickerings to whom it was due, and who are legally entitled to recover it from him. But so far as the purchaser is concerned, his obligation ended with his payment. The private instructions from the principal to their agent, he is not a party to nor bound by. Buckland being clothed, not only with pos-

session of the piano but the right to sell it also, and, moreover, having been allowed to treat it as his own property, and so use it in his private family, without objection or interference by the Chickerings for nine or ten months, we think, under the common law, without pausing to consider the factor's Act, the Chickerings are now estopped from making any demand upon Dias, and that the latter took a good title to the piano.

The facts in this case bring it within the principle, that "when one of two innocent parties must suffer by the fraud of a third, the loss shall fall upon him who has enabled such third person to do the wrong." It also comes within the general rules as laid down in *Wharton on Agency, sec.* 200: "At common law, an agent with *prima facie* right to sell may convey title to *bona fide* purchaser without notice;" and in sec. 201: "Where property is unlawfully sold by an agent, it, or its proceeds, may be followed by the principal until he meet with a *bona fide* purchaser without notice."

The case of *Hall vs. Hinks,* 21 *Md.,* 406, in which there is a full discussion of the principles involved, fully covers the one before us. The doctrine there expressed, as applicable to a case like this, is also recognized in *Levi vs. Booth,* 58 *Md.,* on pages 311, 312.

It follows, therefore, from our conclusions, that we regard the rulings and instructions of the Court below as erroneous; and as the evidence below would have justified an instruction to the jury to find a verdict for the defendant, we shall reverse the judgment without awarding a new trial.

*Judgment reversed.*

(Decided 4th December, 1885.)

ALVEY, C. J., delivered the following dissenting opinion:

Upon the facts of this case as disclosed by the record I have but little doubt that the right and justice of the mat-

ter is with the plaintiffs. I think, however, the case was not sufficiently left to the jury ; the Court having assumed the facts and drawn a legal conclusion therefrom not in every aspect of the case entirely warranted by the law.

It appears that the firm of Buckland, Ebeling & Co. were dealers in musical instruments, and had ware-rooms in Baltimore as a regular place of business. They purchased instruments for sale, and also received instruments from other dealers and manufacturers on consignment for sale, the instruments received by them as consignees being sold for account of the consignors. They were general agents for the sale of the pianos of the plaintiffs, in this State, and the piano in question was one that had been consigned by the plaintiffs to Buckland, Ebeling & Co. for sale for account of consignors. It was therefore not the property of Buckland, Ebeling & Co., but they received it and held it for sale as the agents or factors of the plaintiffs, and were required to sell for cash, and to account for the proceeds. Instead of selling the piano in the course of their business, and as they were authorized to do, these agents allowed it to be taken from their ware-rooms by Buckland, one of the members of the firm, and taken to his private residence, and there used as a piece of the furniture of his house for about ten months. At the end of that time, and but two or three days before the failure and break up of the firm, this piano was sold by Buckland at his private residence, together with all his household furniture, to the defendant, a second-hand furniture broker. The price paid for the piano, according to the evidence of the defendant, was $250, just half of what it would have been sold for at the ware-rooms, if sold as a new instrument and in regular course of the business, according to the evidence of Ebeling, one of the partners.

It is conceded that the piano was held by Buckland, Ebeling & Co. on consignment merely, and not as owners ; and such being the case, it is claimed, and shown by the

evidence produced on the part of the plaintiffs, that the piano was taken out of the warerooms of Buckland, Ebeling & Co. by Buckland on a mere loan to him by the firm, and that it never was in fact sold to him, or to any other person by the firm, to whom it was entrusted as agents for sale. It is therefore insisted by the plaintiffs that they have never been devested of their property in the piano by sale, and that the pretended sale by Buckland to the defendant could only bind those who were immediate parties to it, and not the plaintiffs who were the real owners of the instrument, and who never authorized any such sale as was made by Buckland to the defendant.

On the part of the defendant it is insisted, and he has offered proof to show, that he was a *bona fide* purchaser of the piano from Buckland for value, without notice ; that he purchased the instrument for $250, with and as part of the entire household furniture of Buckland, and supposed the piano to belong to him. And Buckland, testifying on behalf of the defendant, swears that he took the piano from the warerooms and carried it to his house, and made a present of it to his wife, and directed that he should be charged with it on the books of the firm, though he does not state at what price, nor do the books show that he was so charged. It is, however, certain that he never paid for the instrument, nor did the firm of which he was a member ever render any account therefor.

1. If the theory of the plaintiffs be correct, that Buckland never in fact purchased the piano from the firm of Buckland, Ebeling & Co., but simply took it from the warerooms upon loan, as testified to by Ebeling and the clerk, then clearly the subsequent sale of the instrument by him at his house, and as his own property, or that of his wife, passed no title to the defendant as against the plaintiffs, and they are entitled to maintain this action to recover the piano of the defendant, who holds by wrong as against

them.   The law upon this subject would seem to be too well settled to admit of any serious question.   At the common law, and independently of the provisions of what are known as the Factor's Acts, a factor or consignee of goods, holding them for sale for account of his principal, has no power to pledge such goods, and, *a fortiori*, he has no power to loan them for use.   A principal could not be, by any such means, devested of his rights of property. And to acquire a good title to the principal's property by purchasing it from his agent, such purchase must have been from the agent while acting according to his instructions, or from one acting in the usual course of his employment, and whom the purchaser did not know to be transgressing his instructions.   The reason of this is clear, says the late Mr. Smith, in his work on *Mercantile Law, page* 166: "for unless the transaction took place *bona fide* in a market overt (in which case, in England, a peculiar rule of law steps in for its protection,) an agent selling without express authority must, that his act may be supported, have sold under an *implied* one.   But we have seen that an *implied* authority always empowers the person authorized to act in *the usual course* of his employment; consequently if he sold in an *unusual* mode, he could have no *implied* authority to support his act; and as he had no *express* one, his sale of course would fall to the ground.   For instance, the *usual* employment of a factor being to sell, it has been repeatedly decided that he could not *pledge* the goods entrusted to him."   This compendious statement of the law upon the subject, has been fully approved and adopted by the Supreme Court of the United States, in the case of *Warner vs. Martin*, 11 *How.*, 209, 227.

Here, the piano was not sold in the usual course of the business by the firm to whom it was intrusted, and to whom authority of sale was delegated; nor was it sold by that firm at all, according to the testimony on the part of the plaintiffs.   The sale to the defendant was not made

by Buckland in his representative character as a member of the firm of Buckland, Ebeling & Co., but in his own name and right, or that of his wife, as owner of the piano. In such state of case, if it should be so found by the jury, clearly the plaintiffs have not been devested of their property, and they may maintain an action therefor.

2. But if, upon the theory of the defence, the piano was in fact sold to Buckland by the firm of which he was a member, though upon credit, and therefore contrary to the terms upon which it was received by them, such sale would not be absolutely void, but only voidable at the election of the consignors. For while it is true that the character of both vendor and vendee cannot be held by the same person so as to bind the principal, yet such sale would be valid against every person except the principal whose confidence had been abused, and whose rights had been violated by the sale; and therefore, if it be true that the piano had been sold to Buckland by his firm, any person purchasing it from him, *bona fide* for consideration and without notice of the fraud infecting the title, is entitled to be protected in his purchase. If such state of case be found by the jury, the defendant would be entitled to the verdict. The case would then be controlled by the principle of the cases of *Powell vs. Bradlee,* 9 *G. & J.,* 221, and *Hall vs. Hinks,* 21 *Md.,* 406. In my opinion the error of the Court below consists in not having so submitted the case to the jury as to enable them to find how the piano was obtained by Buckland from his firm;—whether by loan or by purchase, and if by the latter mode, whether the sale to the defendant was *bona fide* for valuable consideration, and without notice. I am therefore of opinion that the judgment of the Court below ought to be reversed, and the case be remanded for a new trial.