# BALTIMORE CITY COURT.

Filed August 27, 1910.

THE SINGER SEWING MACHINE COMPANY
VS.
THE LEND-A-HAND BANK.

*William J. O'Brien, Jr.,* and *Isaac S. George* for plaintiff.

*Emil Budnitz* for defendant.

◼◼◼◼◼◼◼
◼◼◼◼◼◼◼

GORTER, J.—

On July 17th, 1908, the Singer Sewing Machine Company, the plaintiff in this case, entered into the following contract with one Mary E. Truffer:

"Singer Sewing Machine Company
Lease.

"This certifies, that I, Mrs. Mary Truffer now residing at No. 1218 Payson street, in the City of Baltimore, State of Maryland, have rented and received from the Singer Sewing Machine Company, (whose corporate existence for all purposes is hereby admitted), hereafter called the Company, through its store 505 N. Eutaw street, the sewing machine and accessories belonging thereto, described by endorsement thereon, all in good order, which I am to use with care and keep in like good order, and for the use of which I agree to pay to the company at said store, rent in advance as follows:

"The sum of $2 cash and paid on former lease $3, for the first month and the sum of $2 cash on the 17th of each month thereafter, for 23 months. But if default shall be made in either of said payments, or if I shall sell, or offer to sell, remove or attempt to remove, the machine from my aforesaid residence, without the written consent of the said company, then and in that case, or at the expiration of the time for which the machine is rented, I will return and deliver the same to the said company in good order, save reasonable wear, and the said company and its agents may resume actual possession thereof; and I hereby authorize and empower the said company or its agents, to enter the premises wherever the machine may be, and take and carry the same away, hereby waiving any action for trespass or damages therefore, and disclaiming any right of resistance thereto, and also waive all right of homestead and other exemptions under laws of said State as against this obligation, and agree that when this lease is terminated I shall not on any ground whatever, statutory or other, be entitled to any allowance, credit, return or set-off for payments previously made.

"Witness my hand, this 17th day of July, 1908.

"Lessee's Signature,

"MARY E. TRUFFER.

"Witness,          ALBERT BUTLER.

"Accepted for

"Singer Sewing Machine Co.,

"By L. WILDEY."

B. Sometime after the execution of the above paper, Mary E. Truffer mort

gaged this machine to the defendant. The Lend-A-Hand Bank. At the time of the mortgage she had only paid $15 on the contract with the Sewing Machine Company, in addition to the $2 paid at the time of the lease, and the $3 from the former lease.

The Lend-A-Hand Bank believed Mary E. Truffer to be the owner of the machine at the time of her mortgage of it to them, and it is conceded for the purposes of this case that there was nothing to put them upon notice as to the plaintiffs interest in the machine, Mary E. Truffer failing in her obligation under the mortgage to The Lend-A-Hand Bank. It replevied the machine and took possession thereof.

C. The Singer Sewing Machine Company learning of these facts demanded the machine of The Lend-A-Hand Bank. And upon its refusal to deliver the machine to them, brought an action in trover before a Justice of the Peace.

D. The case being tried below was duly appealed to this court, where at the trial of the case the defendant, The Lend-A-Hand Bank, offered to prove by Charles Rine, agent of the Singer Sewing Machine Company, and by Mrs. Mary E. Truffer, that if all the payments stipulated for in the lease offered in evidence had been duly made, the machine would have belonged to Mrs. Truffer. This evidence the plaintiff objected to.

E. Maybe not in this case, but in other cases of a like kind, the offer has been made to prove at the time of the contract the agent of the company told the person entering into the contract that if she paid all the instalments the machine would belong to her and not to the company.

Likewise, the attempt has been made to show by the agent of the company that he has never known of a case in which the company has taken the machine where all the instalments called for in the contract have been paid.

F. The purpose of the offer of testimony in this case, and the offers above in other cases, is to show that the contract, while on its face a lease, is in substance a conditional sale, and so passes a good title to a bona fide holder for value under the Maryland law as settled by the cases Lincoln vs. Quinn, 68 Md. 299; Hall vs. Hincks, 21 Md. 406.

G. Is the evidence offered in this case, or evidence of a like character, offered in other cases, admissible to show that the contract between the plaintiff and Mrs. Truffer is not a lease, but a conditional sale? This is the question upon which the determination of this case depends, and the solution of this question depends upon several considerations.

The document upon its face is clearly a lease, or hiring or rental of the sewing machine. The evidence offered is not for the purpose of showing that the parties made a mistake as to the terms of the contract, or to add terms in respect to which the contract is silent, or of a subsequent agreement between the parties; but its object is to vary or alter the terms of the contract by showing that it is something entirely different from what upon its face it purports to be. It is, therefore, an attempt to violate the rule that parol evidence is inadmissible to alter or vary the terms of a written instrument.

I. This we know can be done in equity in certain class of cases. It is always competent to show that a deed absolute on its face, or a deed and lease, when made to secure a loan, is but a mortgage. The first question, therefore, that presents itself is, does the case under consideration, fall within the class or classes of cases that a court of equity, regarding substance rather than form, will admit parol evidence to vary a writing so as to get at the real transaction. And secondly, can this court, on an appeal from a justice of the peace, invoke this equitable maxim, and apply it.

J. As to the first. We know that the injustice and hardship that the lender suffered when his property was forfeited, was the cause of the relief afforded by a Court of Equity, but why should such relief be afforded in a class of cases like the present, where there is no injustice or hardship? The $2 a month is not exorbitant as rental even though at the end of the time, the renter took the machine from the lessee.

Is it against the policy of the law or against fair dealings or against equity, that when parties enter into a contract like the present, they should be bound by it? Why should not the right to the machine when all instalments are paid remain in the Company, although

the almost certain hope of the non-exercise of the right is with the lessee.

The use of the machine for two years destroys most of its value. This is not the case of the rental of the property, where the rent in a short time is equal to the value of the property, and where the value of the property is the same at the end as when the term began.

If a man in writing agreed to rent a house worth $12,000 to another for a year, at $1,000 a month, and although the contract was on its face a lease, but the $1,000 a month was out of all proportions, as it would be, of a house worth $12,000, and the parties at the same time had a verbal understanding that if the instalments of $1,000 each were paid, the property was to belong to the lessee, a court of equity, no doubt, should, and would, afford relief.

In an extreme case of this kind a court of equity would find some way of granting relief, either under the maxim that equity regards substance rather than form, or that the parties had made a mistake, or that the contract was fraudulent, or the lessee non compos mentis.

But in a case like the present can see no reason why the salutary rule of evidence relied on by the plaintiff, should be broken through, even in a court of equity.

K. As to the second:

But, are we in a court of equity? Has this court equitable jurisdiction? Can it declare absolute deeds to be mortgages? Can it correct mistakes in instruments? Can it grant injunctions or appoint receivers? Or, in fact, do any of the things that a court of equity alone has jurisdiction to do.

Section 5 of Article 2 of the Code, in conferring jurisdiction upon justices of the peace, says:

Any justice of the peace of the county where the defendant resides, may, if the case be within his jurisdiction, try, hear and determine the matter in controversy between the plaintiff and defendant upon full hearing of the allegations and evidence of both parties and shall give judgment according to the law of the land and the equity and right of the matter.

The next section, 6, defines the classes of cases to which the civil jurisdiction of justices of the peace extends.

I can find nothing in either of these sections that would carry the authority of the Justice beyond the common law jurisdiction. The word Equity in Section 5 is used synonymously with right, and is not intended to extend the jurisdiction of the justices into the sphere of equity.

Section 6, defining the several classes of cases within the justices' jurisdiction, confirms us in this view.

Nor does the legislature of 1888, Chapter 547, Article 75, Sections 86 and 88, title, "Equitable Defenses," apply to cases before a Justice of the Peace, even if the defense attempted to be made in this case, could be made in a law court under these sections.

L. In view of the above the evidence offered in this case should not be admitted.

I am also of the opinion that the evidence of the same character and with the same object, which I have said was offered in other cases, should likewise be rejected.

The evidence being excluded, the admitted facts in the case give the plaintiff the right to a verdict.