By the Court. Woodruff, J.
The counsel for the plaintiff, in support of the present motion, insists that the nonsuit was erroneous, because the defendants had, at the time of the commencement of this action, acquired no title to the oats in question, or if they had acquired any title upon which they could claim or retain the possession as against the plaintiff’s vendee, (Cox,) it cannot avail them as against the plaintiff himself, i. e., they had no other or better title than Cox himself. That Cox had no title as against the plaintiff for two reasons, that the purchase by Cox was fraudulent, and made with the preconceived intention not to pay for them, and also that the sale being for cash on delivery, the act of measuring, which for convenience was done from one boat into the other, did not constitute an absolute delivery, but was conditioned upon the payment therefor on the coming in of the measurer’s returns; and that there was evidence tending to establish all the facts which enter into these propositions, which evidence ought to have been submitted to the jury.
The counsel for the defendants, on the contrary, insist that the delivery of the oats to Cox was complete, absolute, and unconditional, and that the defendants are bona fide purchasers without notice of any defect in the title of the parties in possession, and are therefore entitled to retain the property and enjoy the fruits of their purchase, although they have paid nothing and had not received complete delivery when the action was commenced.
It is not denied by the counsel in this case that when an owner of property makes an unconditional delivery to his vendee, with the intent then to transfer the title to him as purchaser, a subsequent bona fide purchaser from such vendee will acquire a valid title, although such owner was induced to sell and deliver by the fraud of his vendee.
Uor is it denied that, where an owner, having sold his property, qualifies the delivery thereof by annexing a condition that pay-: ment shall be made, still a bona fide purchaser from the vendee, without notice of the condition, will acquire a valid title.
Both of these propositions have recently been considered and decided in this court, and the cases on the subject collected and discussed. (See Caldwell v. Bartlett, 3 Duer, 341; Keyser v. Harbeck, ib. 373.) Since the case of Mowry v. Walsh, (8 Cow. 238,) the former proposition has not been disaffirmed, and the case of *239 Smith v. Syms, (1 Selden, 41,) in the Court of Appeals, distinctly affirms the latter.
Before considering the question whether the title of Cox, the plaintiff’s vendee, to the oats in question, was valid as against the plaintiff, it is proper to inquire, whether the defendants are bona fide purchasers within the meaning of these rules ?
It is quite clear that there was no sufficient evidence in this case to warrant the court in saying that Rawles & Seymour, from whom they made their purchase, were such purchasers, and the defendants cannot therefore repose upon Rawles & Seymour’s title. They, Rawles & Seymour, are not shown to have in fact purchased from Cox or any one else. .They are not shown to have had the possession at any time; the oats remained in the boat of Cox. They are not shown to have paid any thing for the oats, or to have made any advance thereon. The fact, which is proved, that they assumed to negotiate a sale to the defendants, and that a delivery was begun in pursuance of their contract of sale, indicating that they had, for this purpose, a control over tho oats, is entirely consistent with the continued possession and ownership of Cox, because it is proved that Rawles & Seymour are commission merchants, and there is no proof that they acted in any other capacity. If, then, it shall appear that Cox had no title valid as against the plaintiff, the proof comes far short of showing that Rawles'& Seymour are bona fide purchasers from him, entitled to protection as such against the plaintiff’s claim. The evidence indicates rather that they were negotiating a sale for Cox to the defendants.
The defendants must, therefore, for the purposes of this branch of the case, rest upon their own position as purchasers, and this, we think, is insufficient. It is not enough to constitute a bona fide purchaser, (within the meaning of the rule,) that he has entered into an executory contract of purchase which, if not performed, will leave him in the same condition as if no such contract had been made. It has been said, it is true, that a mere contract for the sale of goods, where nothing remains to be done by the seller before making delivery, transfers the right of property, although the price has not been paid, nor the thing sold delivered to the purchaser. (Olyphant v. Barber, 5 Denio, 382, and cases cited.) This may be true as between buyer and seller for *240 many, or all, purposes, and yet the right of a defrauded vendor of the latter have a paramount right, against which such a contract of sale will avail nothing. The general rule, that one shall not profit by another’s fraud, forbids such a result. But in the present case something yet remained to be done by the seller at the very time when this action was commenced, and when the defendants received notice of the plaintiff’s claim. They had purchased the oats which were in the boat of Oox, “more or less,” at 51J cents per bushel. Measurement was necessary, and neither measurement nor delivery was completed when the sheriff interrupted its progress, and the defendants received notice of the plaintiff’s claim. They had paid nothing. They had not obtained possession. If the oats were taken from them by the plaintiff, they would be in no worse position, (assuming, of course, in this view, that the plaintiff had a better title than Cox,)than they were before their contract of purchase was made. They would simply have failed to realize a profit which, if Oox had title, they might probably have realized from the transaction. The rule may safely be stated that no one is a Iona fide purchaser, in the sense now proposed, who has neither advanced money nor property, nor incurred liabilities, upon the faith of his vendor’s apparent title, and without notice of any defect therein; and by liabilities is meant those obligations from which the retaking, by the former and true owner, will not of itself relieve him. If, after such retaking, he will be in all respects in the same condition as if he had made no such contract of purchase, he is not a bona fide purchaser, having title paramount to that of the true owner.
Here, it cannot be said by the court that the defendants are proved to have paid any money, or incurred any such liability. Upon the facts now appearing, if the plaintiff be the owner as between him and Oox, the defendants can never be required to pay him for the oats, and they have given no property or securities, negotiable or otherwise, therefor. Unless we can say that they are liable for one-half the measurer’s fees, they can suffer no prejudice ; and on that subject the evidence in the cause indicates that those fees are paid, in the first instance, by the seller, and, if so, he can no more collect them, under the circumstances proved, than he can the price of the goods.
The’case must therefore be decided by determining whether the *241 court is warranted, by the evidence, in saying that Cox acquired a valid title as against the plaintiff, for if the testimony was such as to require the submission of any question of fact to the jury, a new trial must be ordered.
If the purchase by Cox was a fraudulent device to obtain the possession of the plaintiff’s oats and sell them, applying the proceeds to his own use, knowing that he was about to fail in business, and without any intent to pay for the oats according to the terms of the contract of purchase, then, however absolute and unqualified the delivery to him may have been, he acquired no title.
On Tuesday night he instructed his agent to purchase eight or ten thousand bushels of oats for cash on delivery (or on the usual terms, which imports the same thing). He gives no direction or limitation as to price. The purchase is made on Wednesday at the plaintiff’s price. The delivery into his boats is completed on Saturday. Before 12 o’clock on Monday, he had suspended payment ; and yet on Monday morning he had delivered three thousand seven hundred bushels on ship-board; he had, in some manner, disposed of at least five hundred bushels from his boat, the J. P. Whiley, and on that day commenced the delivery of the residue contained in that boat to these defendants; and when called upon by the plaintiff for payment, nor at any time after, so far as appears, not a word of explanation is given, or attempted, and no fact shown indicating any failure in his expectations, or any misadventure or accident preventing payment. And on the trial no proof is offered to show that his suspension was caused by circumstances over which he had no control, or to indicate that he was not aware some short time, at least, before his actual suspension, that such event was unavoidable, It is true that a failure in business is sometimes sudden and unexpected to the party himself, but when so heavy a purchase is made, and so immediate a disposition of the property follows the act of suspension, without an offer to return the property for which instant payment was due, and which had hardly come to his control, and when a very plight sense of justice would have prompted an offer, at least, of the proceeds of the sale, it seems not too much to say, that there is some evidence of fraud in the whole transaction. So long as the oats were not measured the title remained in the plaintiff, and the delivery was not completed until Saturday morning. In the *242 absence of all explanation, it would be no violent presumption that when Cox took the possession, and removed the goods after that time, he knew he could not pay, and did not intend to pay, according to his contract. We are aware that this evidence is not conclusive, but whatever suggestions may be made, or hypothesis proposed, to diminish the force of the circumstances indicating fraud, we think the evidence clearly sufficient to be submitted to a jury, and to call for some explanation or rebutting evidence.
Again, if the delivery by the plaintiff was a conditional delivery, as mutually understood and intended by the parties, Cox acquired no title, as against the plaintiff, without payment of the price. On this point there is no difficulty in declaring the rules of law, 'though there may be some in applying them to the-evidence given on the trial. It may be said, in general terms, that no man shall be held to part with his title to his vendee without his own voluntary consent to do so; but on the other hand, a man is deemed to consent to the legal consequences of his own voluntary acts. When a sale is made for cash, to be paid on delivery, the title does not vest in the purchaser by the mere fact of manual delivery, unless the purchaser performs the condition, or the seller waives such performance. In general, delivery and payment are to be simultaneous acts; but in strict order of time, the seller must complete the manual delivery before his title to the money is complete; that is, he must perform the condition on his part; and where goods are of great quantity, requiring considerable time to deliver, it is not until the whole have passed through the process of delivery that the seller can demand any thing, but his lien continues, and his right to resume the actual possession is perfect unless payment is made, and until he waives the condition; and, on the other hand, if the delivery be absolute and without any circumstances indicating an intent that the title should not pass, such delivery vests the title though the condition be not performed.
Where the circumstances are such that the acts of the seller neither indicate an intent to make the delivery absolute, nor to part with the title without payment, and where an intent to insist upon the condition may have effect, in consistency with the acts of the party, the condition should not be deemed waived. In such case the vendor should not be held to have invested the vendee with the title if he never intended to-do so. On the other hand, *243 when a delivery is made without any cotemporaneous qualification, the vendor must be required to show affirmatively on his part, acts, circumstances, or previous declarations from which it may be clearly inferred the condition was not waived, for the delivery will be deemed conditional if such was the intent of the parties, though not so declared at the time in express terms.
These principles are deducible from numerous cases in this state and England, and are reasonable and just, Indeed, they would not probably be denied by the counsel in the present case. (See Smith v. Syms, 1 Selden, 41, S. C., 3 Sand. 203; Caldwell v. Bartlett, and Keyser v. Harbeck, supra, and the numerous casés cited in each; Van Neste v. Conover, 20 Barb. Sup. C. R. 547; Ives v. Humphrey, 1 E. D. Smith R. 196.)
In the case before us, the evidence was that the sale was for cash on delivery. The oats were first to be measured, and the delivery was to be actually completed before the payment was due, and if such payment was not then made, the title did not pass; it was upon that condition only that the property was to become Cox’s property. Was this condition waived? The agreement was,, that the oats should be taken to some pier up the East River, to be there measured; the measurer was sent on board, and the work of measuring progressed until Saturday morning. It does not appear that the vendor was present; the measurer’s return did not reach him certainly before three or four o’clock on Saturday afternoon, and it seems probable that he did not personally see it until Monday morning. At all events, it was after the usual hour of making and receiving payments on Saturday when it reached his store. On Sunday, of course, there yas no opportunity to demand payment; on Monday, at twelve o’clock, he presented the bill, and demanded payment. His delay even to that hour is explained by the fact that there was a wide discrepancy between the quantity returned by the measurer and the quantity the parties supposed to be in his boat, and, as it seems from the evidence, the actual quantity sold. He had been in the morning engaged in an endeavor to find out the mistake in that respect. It does not appear that until so engaged he had any actual knowledge that the oats had been removed from the place of measurement, if indeed they had down to that time been removed. It does not appear that he at any time consented to such removal; and though *244 it may be said, that the person in charge of his boat, from which the oats were measured, must be deemed his agent, it does not appear that he had any authority to consent to a removal of the oats, nor is an authority to waive the condition to be necessarily implied from any evidence given on the trial. Under such circumstances, it ought, we think, to have been left to the jury to say, whether there ever was, in fact, any absolute delivery to the purchaser Cox ? If all that was done was consistent with an intent to insist upon the condition, or rather, if nothing that was done indicates that such condition was either actually waived or intended to be waived, the lapse of a few hours after the measuring was completed ought not to be deemed so clear evidence of waiver as to withdraw the question from the jury. And though it be conceded that a voluntary sole reliance upon the personal responsibility of Cox, and a voluntary giving to him a credit for some time, however short, after an unqualified delivery of the possession would have vested in him the title, we think that such a delivery and giving of credit were by no means clearly proved.
The nonsuit must, therefore, be set aside, and a new trial ordered, with costs (including the costs in the General Term) to abide the event.