WILLIAM W. BALLARD and JOSEPH C. SAMPSON, Respondents, *v.* RICHARD BURGETT, Appellant.

A *bona fide* purchaser of personal property other than commercial paper, although from one who has the possession, acquires no better title than that of his vendor.

The plaintiffs sold to F. a yoke of oxen, and it was agreed that the oxen were to remain the property of the plaintiffs until they should be paid for by F., the latter in the meantime having possession. F. afterwards, and before he had paid for them, sold the oxen to the defendant, who paid a full price and bought in good faith, without notice of the plaintiffs' rights,—*Held* (JAMES and MURRAY, JJ., *contra*), that the defendant acquired no title as against the plaintiffs.

*Wait* v. *Green* (36 N. Y., 556) distinguished.

(Submitted on a re-argument January 16th, and decided March 23d, 1869.)

APPEAL from a judgment of the General Term of the Supreme Court, affirming a judgment in favor of the plaintiffs, entered upon the report of a referee.

The facts sufficiently appear in the opinions of the court.

*Hudson Ansley,* for the appellant.

*Jenkins & Goodwill,* for the respondents.

GROVER, J. The referee finds as facts : That the plaintiffs, in the month of October, 1865, sold the oxen in question to one William France for $180, with the agreement that the oxen were to remain the property of the plaintiffs until paid for; that France had never paid the plaintiffs for the oxen ; that in April, 1866, said France sold and delivered the oxen to defendant, who purchased without any notice of plaintiffs' claim. The question presented by this appeal is, whether the defendant, by virtue of his purchase of the oxen from France, has acquired title thereto as against the plaintiffs. From the facts found, the defendant must be regarded as a *bona fide* purchaser from France. The finding of the referee as to the contract between the plaintiffs and France is a little obscure. A sale and delivery of personal property by one person to another, is incompatible with the ownership of such property continuing in the seller. A sale and delivery of personal property always, when consummated, transfers the title from the seller to the purchaser ; but the referee expressly finds that the agreement was that the oxen were to remain the property of plaintiff until the $180 were paid. It is manifest that the referee did not intend to find an absolute sale and delivery. The true construction of the finding is, I think, that the plaintiffs agreed with France that when he should pay to them $180, they should sell him the oxen, and that until such payment or other termination of the contract, he should have possession, and that they deliver the oxen to him pursuant to this agreement. It is conceded, that under such an agreement, France acquired no valid title to the

oxen, and that upon his failure to pay pursuant to the contract, the plaintiffs had as against him a perfect title. But it is claimed that France, although he had no title himself, but only the right to acquire title by paying the money, nevertheless by selling to a *bona fide* purchaser, such purchaser acquired from him a valid title against the plaintiff. If this be so, this class of cases constitute an exception to the general rule, that a purchaser of personal property other than commercial paper acquires no better title than that of his vendor. There are some exceptions to this rule; and it is claimed by the counsel of the appellant that this is one. I can conceive no substantial principle upon which such an exception can be sustained. The possession of the contemplated purchaser gives him no better opportunity to impose upon purchasers than that of an ordinary bailee. In the latter case, it has never been claimed that any title would be acquired by a purchaser from such bailee. Possession by a vendor without title, has never been held sufficient to confer a title upon a purchaser from him. Clearly, the existence of an executory contract, by which a vendor not in possession may acquire title upon the performance of some act by him, will not enable him to confer a title upon a purchaser from him. If neither of these facts, separately considered, will enable a vendor to confer title, I am unable to see how such result can be produced by uniting them in a vendor. That is all the basis of the defendant's title. It is insisted by the counsel of the appellant that the title of the purchaser in this class of cases is established by the authorities. *Wait* v. *Green* (36 N. Y., 556), is claimed to be directly in point. The opinion of the learned judge would seem to sustain the position of the counsel; but an examination of the facts will show, I think, that the point was not necessarily involved in the decision of the case. The facts, as stated, are, that Catherine Comins sold and delivered a horse to one Billington, and took his note therefor for $100, payable in five months with interest. Directly under the note, and on the same piece of paper was a memorandum,

signed by Billington, as follows: Given for one bay horse; the said Mrs. Comins holds the said horse as her property until the above note is paid. The fair intendment from the above facts is, I think, that Mrs. Comins intended to sell and deliver the horse to Billington, and transfer the title to him, and take back from him security for the payment of the note given for the purchase price in the nature of a chattel mortgage upon the horse. It is clear that had the horse died without fault of Billington, before the payment of the note, such death would have been no defence to an action on the note. The horse was at the risk of Billington. This is a strong, if not conclusive circumstance, showing the correctness of the above construction of the facts. Not so in the case at bar. Had the oxen died without the fault of France, no action could have been sustained by the plaintiffs for the purchase money. That in no event could be recovered unless the plaintiffs were able to give France a title to the oxen, unless their ability so to do had been prevented by France. The title of the oxen in the present case was in the plaintiffs, and they were at their risk. *Haggerty* v. *Palmer* (6 Johns. Ch.) was cited by the learned judge. That was a case where goods were sold at auction in New York, to be paid for in approved indorsed notes. The goods were delivered to the purchaser without delivery of the notes. The latter assigned them to a trustee for the benefit of creditors. *Held*, by the chancellor that the trustee was accountable to the vendor for the goods and their proceeds. The point adjudged has no analogy to the present case. *Burk* v. *Grimshaw* (1 Ed., Ch. 140,) also cited, was a case where Burk sold Grimshaw a quantity of cotton for cash on delivery; a part was delivered without payment; Grimshaw loaded this part upon a vessel, and received a bill of lading, and transferred the bill of lading to Sands & Co., from whom he received advances thereon; he afterwards failed without having paid for the cotton delivered. *Held*, that the delivery to Grimshaw was absolute; that the title of the cotton was thereby changed, and that Sands

& Co., who had made advances upon the bill of lading could hold it against the vendor. It may be remarked, that this falls within the class of cases where sales have been made for cash on delivery, and the property has been delivered without exacting payment, it has been held that the title passed by delivery, and the vendor retained a lien upon the property for the purchase money, but that such lien was not available against a *bona fide* purchaser of the property. In *Caldwell* v. *Bartlett* (3d Duer, 341), the question was whether, where the owner delivered goods upon a contract of sale, intending to part with the property to a fraudulent purchaser, such owner can reclaim the goods from a *bona fide* purchaser from the fraudulent vendor. *Held* that he could not. The rule acted upon in this case is sustained by numerous authorities. This rule was recognized in *Beavers* v. *Lane* (6 Duer, 232); and in the same case it was held, that where the delivery was upon condition that immediate payment should be made, the vendor, in case it was not made, could not recover the property from one who purchased from his vendor in ignorance of such condition. The latter position is identical with the principle recognized by *Burk* v. *Grimshaw* (*supra*.) An examination of *Covill* v. *Hill* (4 Denio), will show that the points decided give no support to the rule contended for by the appellant's counsel in this case. The same remark applies to *Fleeman* v. *McKean* (25 Barb., 474), as to the questions decided, although some remarks in the opinion may seem to countenance it. The case principally relied on, is that of *Smith* v. *Lynes* (1 Selden, 41). All that was determined by this case, was, that where the sale is upon condition that the goods should be paid for on delivery, and they are delivered without payment being made, a *bona fide* purchaser from the vendee acquires a title, discharged of the lien for the purchase money. *Crocker* v. *Crocker* (31 N. Y., 507) holds that, where the legal title to corporate stock was in the hands of one charged with a trust in behalf of another, a purchaser from the trustee, ignorant of the trust, acquires a good title. *Keeler* v. *Field* (1 Paige, 312) involved only the question,

whether a vendor who was to receive payment upon delivery, but who had delivered the goods without payment, could enforce his lien against one who had received the goods from the vendor as security for an antecedent debt. *Held* that he could. The question in the *Western Transportation Co.* v. *Marshall* (37 Barb.) appealed in this court, was whether a vendor for cash on delivery, who had made delivery without payment, and who had permitted the vendor to load the goods upon a vessel and receive a bill of lading therefor, could recover the goods from the owner of the vessel, or the holder of the bill of lading, who had made advances thereon to the purchaser. It was held that he could not. It will be seen that in no one of the cases referred to in *Wait* v. *Green*, has it been determined, that one to whom property has been delivered without any intention to transfer the title, upon a contract for a sale in future, upon payment being made of a certain sum, and that in the mean time the contemplated purchaser shall enjoy the use of the property, can confer a good title to a purchaser from him. In *Herring* v. *Hoppock* (15 N. Y., 409), it was determined by this court, that one who has bargained for the purchase of a chattel, and agreed to pay therefor at a future day, and has received a delivery under an agreement that no title should vest in him until payment, acquired no title; and that a creditor of such person, who had levied an execution thereon, was liable to the owner for the conversion of the chattel. This would be decisive of the present case, unless it be held that chattels so delivered are to be placed upon the same ground as commercial paper in respect to purchasers. A like doctrine was held by the Supreme Court of Vermont, in *Bigelow* v. *Huntley* (8 Vermont, 151). This precise question was determined by the Supreme Court of Massachusetts in *Sargeant* v. *Metcalf* (5 Gray., 506), where it was held that the purchaser acquired no title. The same rule was held by the Supreme Court of Connecticut, in *Hart* v. *Carpenter* (24th Conn., 427). My conclusion, both upon principle and authority is, that the purchaser from France acquired no title,

and that the judgment of the Supreme Court affirming that of the referee should be affirmed.

LOTT, J. The referee has found that the plaintiffs sold the oxen, for the recovery of which this action is brought, for the price of $180, to one William France; "and that it was agreed by and between the plaintiffs and France, that the oxen were to remain the property of the plaintiffs until they should be paid for by said France;" that he (France), subsequently sold and delivered them to the defendant, who purchased and received them without notice that the plaintiffs had any claim on them, and that they at the time of such sale, had not been paid for.

Upon those facts, the referee found as a conclusion of law, that the plaintiffs were entitled to the possession of the oxen, or to the recovery of their value.

Conceding that France, under that agreement, took possession of the cattle, as a finding of a delivery of them by him to the defendant implies, such possession was not as owner. He, at most, was only entitled to the use of them until payment of the price agreed to be paid, and the title by the terms of the contract in the mean time continued in the plaintiffs. When he made the sale to the defendant, he had not paid the stipulated price, and consequently had not become the owner of the property.

This principle was fully settled by the decision of this court in *Herring* v. *Hoppock* (15 N. Y. Rep., p. 409.) In that case, the property was delivered to the purchasers, but its delivery was declared to be under a bargain for the sale thereof, and upon the express understanding, that the seller parted with, and that the purchaser acquired no title to the property, until the note given therefor was paid; and in default of such payment, the vendor was authorized to enter upon the premises of the purchaser and take and remove the property.

Judgments were subsequently recovered against the purchaser, and the property was levied on and sold under execu-

tions thereon. . The vendor notified the officer of his title, but he on being indemnified proceeded to sell.

The judge at the Circuit, on those facts, charged the jury, that the plaintiff was entitled to a verdict; and the judgment entered thereon was affirmed by this court. That case is distinguishable from this, in the fact that the contract in terms acknowledged the delivery of the property, and the possession and use of it until default in payment of the purchase money was made.

The same principle was recognized and reasserted in the case of *Hasbrouck* v. *Lounsberry* (26 N. Y. Rep., p. 598). Assuming then that France had had' no title to the property, when he sold and delivered it to the defendant, does the fact that he bought it without notice of the plaintiffs' right, affect their right of recovery ?

I am unable to discover on what principle this can be claimed. The general rule is, that a seller could give no better title than he himself has.

The rights of the vendor in the cases which give color to a contrary rule were based on the ground, that the facts warranted the conclusion of an unconditional delivery.

That was the ground on which PAIGE, J. placed his decision in *Smith* v. *Lynes* (1 Selden, p. 41), cited by the defendant's counsel, in holding that the' nonsuit was correct as to the defendants, Thompson, Schoonmaker, and Dean, the members of the firm of Thompson & Co., purchasers from Lynes, their co-defendant, and yet he held that Lynes acquired no title to the goods, of which there had been only a conditional delivery to him.

I am aware that BOCKES, J., has in his opinion, in *Wait* v. *Green* (36 N. Y. Rep., 556), treated the remarks of Judge PAIGE quoted by him, as applying to cases of conditional, as well as an unconditional delivery, and the same remark is, applicable to the statement of STRONG, J., in *Fleeman* v. *McKean* (25 Barb., Sup. Co. Rep., p. 474), which was *obiter dictum* merely, and not called for by the decision in that case, nor warranted by the facts and decision in *Hag-*

*gerty* v. *Palmer* (6 John. Ch. Rep., p. 437), referred to by him.

I am aware too, that the opinion of Judge BOCKES referred to sustains the doctrine, that in a case like the present, the defendant's title would be perfect. He says : " Let it be conceded that the sale and delivery was conditional, that the agreement was, that the horse should remain the property of Mrs. Comins (the seller), until paid for, and that the plaintiff succeeded to all her rights, and that the defendant was a *bona fide* purchaser from Billington (Mrs. Comins' vendee) ; and the authorities are full, to the effect that the defendant will be protected in his title."

With due deference, I think his language is too strong. I will examine briefly the authorities cited by him not already referred to by me. In 2d Kent's Com., p. 497, the learned commentator does not express any definite opinion on the question ; and, after saying that " the property in such a case does not pass by the delivery as between the original parties " says : " Though as to subsequent *bona fide* purchasers, or creditors of the vendee, the conclusion might be different." He does, it is true, subsequently, page 498, say that " if the delivery of goods precedes for a short time the delivery of the note to be given for the price, according to particular usage in that species of dealing, the delivery is understood to be conditional," and that the seller's right to the goods " will be good as against the buyer and his voluntary assignee, though not as against a *bona fide* purchaser from the vendee ; " and cites the case of *Haggerty* v. *Palmer* (6 John. Ch. Rep., p. 437, *supra*), decided by him as chancellor, which, on reference to it, will be found to be a case between the seller and voluntary assignee of the purchasers.

The case of *Buck* v. *Grimshaw and others* (1 Edw. Ch. Rep., p. 140, &c.), was a case of a sale by the plaintiff to Grimshaw of a quantity of cotton, payable in cash on delivery on a specified day after the sale. Before that time, the seller on an order of Grimshaw, delivered a portion of the cotton without payment, and an unexpected failure of a

mercantile house compelled him to stop payment, and rendered him insolvent before the day the purchase money was to be paid. The other defendants had made an advance to Grimshaw upon the cotton, and a bill of lading thereof was delivered to them, and they refused to give it up, and thereupon the action was commenced to compel them to make payment therefor or restore it to the plaintiff.

Vice-Chancellor McCoun, after consideration of the facts says : "In whatever light this case is viewed, I think there is not enough to warrant the conclusion, that it was such a conditional sale or delivery of the cotton in question, as to entitle the complainant to reclaim it;" and then, after remarking that, if it were otherwise, the court might have great, if not insuperable difficulty in enforcing the claim against the other parties, he concludes with the remark that, " it is unnecessary to pass definitively upon that point."

The decision in *Caldwell* v. *Bartlett* (3 Duer, p. 341), was placed by Bosworth, J., in his opinion on the ground that the plaintiff had failed to show that any condition was annexed to or qualified the delivery of the goods, and that therefore the delivery must be considered absolute, and that the title to the goods passed to the vendee.

In *Covill* v. *Hill* (4 Denio, p. 323), Bronson, Ch .J., after adverting to the nature of the transaction then under consideration, says : " In the case of a conditional sale it may be that a *bona fide* purchaser who parts with his money or who makes advances on the property, trusting to the credit of appearances, will obtain a good title or lien, on the principle which is sometimes applied that when one of two innocent persons must suffer from the fraud of a third, the loss shall fall on him who has enabled such third person to do the wrong, but it is unnecessary to decide that question; for there was no conditional sale, nor a sale of any kind from the plaintiff to Potter ;" and in that case he, after referring to the exceptions in favor of trade in the case of money and negotiable instruments, says " but as to other personal chattels, the mere possession, by whatever means it may have been acquired, if there

be no other evidence of property or authority to sell from the true owner, will not enable the possessor to give a good title."

In the case of *Beavers* v. *Lane* (6 Duer, p. 232), WOODRUFF, J., did not consider the defendants to be *bona fide* purchasers, and on that ground, and because the question whether there was ever in fact an absolute delivery to the purchasers, should have been left to the jury, the nonsuit in that case was set aside.

The case of *Keeler and Freeman* v. *Field and others* (1 Paige, p. 312), was a case of a conditional sale by the plaintiffs to Field, and a voluntary assignment by him to the other defendants to secure them from responsibilities which they had previously incurred, and to pay the surplus, if any, to his creditors generally, and the chancellor held the plaintiffs entitled to the goods received by the assignees.

The decision in *The Western Transportation Co.* v. *Marshall and others* (37 Barb. S. C. Rep., p. 509), was placed on the ground that the undisputed facts in the case "constitute a voluntary delivery of the grain, by the plaintiffs through their agents to the purchasers, although the cash has not been paid," and that they could not recover against the defendants holding as subsequent *bona fide* purchasers or lien holders.

The case of *Crocker* v. *Crocker and others* (31 N. Y. Rep., p. 507), was a case, where the plaintiff owning certain stock in a manufacturing company made an arrangement by which the legal title to it became vested in the defendant, Crocker, his brother, but was to be held for the benefit of the plaintiff. It was held that he, "having, through misplaced confidence, conferred on his brother the apparent right of property as owner, a *bona fide* purchaser of the stock from him in the course of commercial dealing, without notice, would be protected in his title against the latent equities of the plaintiff."

It will thus be seen from the statement of the decisions cited, in *Wait* v. *Green, supra,* that they do not sustain the doctrine laid down by the learned justice giving the opinion therein.

That opinion concluded with the remark that "the judgment in this case is right and must be affirmed, with costs;" and the report states that all of the justices concurred, meaning, I infer, in the conclusion.

The brief statement of the facts, as there reported, warrant the inference that the concurrence of the other judges was upon the ground that there had been an absolute and unconditional delivery of the horse. It states that Mrs. Comins sold and *delivered* it to Billington, and took his note, at five months, with interest, and that under the note and on the same piece of paper was a memorandum, signed by Billington, as follows: "Given for one bay horse. The said Mrs. Comins holds the said horse as her property until the above note is paid."

It is also stated that the note was not paid at maturity, whereupon the plaintiff, to whom it had been transferred, demanded the horse from the defendant, and upon his refusal to surrender it this action was commenced for its recovery, with damages for its detention.

It is not shown when that memorandum was made, nor does anything appear in reference to the character of the delivery.

The case is also reported in 35 Barb., Sup. Co. Rep., p. 585, and there it is stated that the defendant, in his answer, alleged that Billington, on the 2d day of June, was in possession of the horse, as the absolute owner thereof, and that he, on or about that day, in good faith, and for a valuable consideration paid to Billington therefor, purchased it and became and continued to be the owner thereof.

The proof, as there given, showed a claim of absolute ownership by Billington, and the purchase of the horse by the defendant, and that he gave, in exchange therefor, another horse and sixty-five dollars in money; that in September following, and more than a month before the maturity of the note the plaintiff, on hearing of Billington's sale to the defendant, called on him, and "showed him the note and condition or agreement attached to it, and demanded of him

the horse or pay for him. The defendant refused to deliver
or pay for the horse." Thereupon, it is stated, the plaintiff
commenced this action, and claimed and obtained the delivery
of the horse to him ; and, upon the trial at the Circuit, the
jury, under the direction and order of the justice presiding,
found a verdict for the plaintiff. The General Term, how-
ever, on review, held that the defendant was entitled to judg-
ment, and so ordered.

BACON, J., in giving the opinion of the court, begins by
saying : " This action seems to have been either very imper-
fectly tried or meagerly reported. So far as any direct evi-
dence is concerned, two very essential points are either
undetermined or are to be assumed or inferred mainly from
other facts proved in the case."

He then says, referring, I presume, to one of those points :
" It seems not to be entirely clear that the plaintiff purchased
anything but the promissory note which Billington gave on
the purchase he made of the horse from Mrs. Comins."

He then, after some further comments, says : " The other
point, as to the delivery and possession of the horse at and
after the giving and transfer of the note, is left equally at large
so far as any direct evidence is concerned ; but the implication
is perhaps strong enough, from what appears in the case, to
justify the conclusion that the horse was delivered by Mrs.
Comins, the vendor, to Billington, the vendee, upon the latter
executing and delivering to the former the note and memo-
randum annexed thereto."

He then, after referring to the purchase of the note by the
plaintiff, remarks, " To put the case, then, in the aspect war-
ranted by the evidence, and the reasonable inferences to be
drawn from all the circumstances, it may fairly be stated thus :
There was a conditional sale of the horse to Billington, which
was accompanied or followed immediately by an unconditional
delivery and a continued possession by him. Billington was
thus clothed with the apparent right of absolute ownership ;
and, claiming to be such owner, with the accompanying *indicia*,
he sold the property to the defendant, who purchased and paid

for it in good faith, for a valuable consideration, and without knowledge of any claim or equity in a third party, or anything to put on inquiry after any such claim." And adds: "Upon this state of facts, I think the defendant, upon well settled principles, is entitled to be protected."

In that conclusion I fully concur, and upon those facts this court, on appeal, clearly were right in concurring with the learned justice who gave the opinion in his concluding remarks, that "the judgment in this case is right," although the reasons assigned for it may not be satisfactory or consistent with legal principles.

It is certain that a part of the language of Judge BACON in the commencement of his opinion is applicable to the case, as reported in this court. It is "very meagerly reported," and tends to give a very erroneous understanding of the actual decision made.

In the statement of the case, and the opinion as reported in the Supreme Court, there are two facts stated on which this court may have affirmed the judgment; one of them is, that the note only was transferred by Mrs. Comins to the plaintiff, and that he had no right to the horse; and the other, that the note had not matured when the demand of the horse was made and the suit commenced.

In the case under review, there was not an absolute and unconditional delivery of the oxen to France. He held no *indicia* of actual ownership, at the time of the sale by him to the defendant, and there was nothing to indicate an ownership, unless perhaps the mere possession of them, and a sale, with no other evidence of right, was not sufficient to divest the title of the true owner.

My conclusion, therefore, is that, for the reasons above stated, the judgment in this case is right, and must be affirmed with costs.

All the judges concurred for affirmance except JAMES and MURRAY, JJ., who could not distinguish the case from *Wait* v. *Green* (36 N. Y. R.).

Judgment affirmed.