Peokham, J.
TJpon the facts, as found by the learned judge at the circuit, it appears that the plaintiff and his then partner sent, by railroad, five barrels of whisky to the defendant, *616 consigned to him at his place of business at Hempstead, L. I., with an invoice thereof from them to him, and took a receipt to that effect from the railroad company. That the names and place of business of the sellers, “ wholesale dealers in spirits, 4 Flushing avenue, Brooklyn,” were marked on the barrels. That the defendant took the barrels from the railroad, but he did not notice the sellers’ names upon them, nor .did he receive the invoice thereof sent by the sellers. That these barrels were so sent at the instance of one Roberts, of Hempstead, L. I., who came to the seller’s store "and ordered them for defendant as his authorized agent. That a day or two prior to giving such order, Roberts had been at the defendant’s place of business, exhibited to him a sample of whisky in a vial, and had proposed to sell him five barrels for cash on delivery, alleging that he ran a distillery in Brooklyn, but did business in another name. The contract, was made, and on the next day Roberts told defendant that the goods were at the railroad depot, and showed him an invoice of five barrels of spirits from Lewis & Co. They both went to the depot, and found there the plaintiff’s goods, which the defendant took away, and for which he paid the freight from Brooklyn, and paid Roberts the price agreed upon between them, in full, within some ten days, without notice that the goods belonged to plaintiff, and in good faith believing them to belong to Roberts, and without" notice that Roberts had assumed to act as defendant’s agent in their purchase for him.
It further appears that Roberts was not authorized by either party to act for him or them in this matter; was not and ■ never had been the agent of either as to the purchase or sale of said spirits. Roberts never had any possession of the spirits. The spirits were delivered to the Long Island railroad in Brooklyn by the sellers, the plaintiffs. He had neither authority nor the semblance of authority to act for. plaintiffs. The property, as is expressly found, belonged to the plaintiff.
When called upon for payment for this whisky by the plaintiff, the defendant, while admitting the receipt of the whisky, denied that he had -bought it of plaintiff, but insisted *617 that he had purchased it from Roberts as the whisky of Roberts, had paid him for it, and produced the receipts therefor from Roberts, and defendant did not think any of the barrels were in his store when plaintiff called.
Upon these facts, I do not see how this judgment for the defendant can be sustained. The defendant bought the plaintiff’s whisky from a third person, who had neither real nor apparent authority from the plaintiff to sell it. Does it give him any better title, that he bought plaintiff’s property in good faith from one who had no right to sell ? Certainly not. The rule ca/oeat errvptor applies, if any rule at all be necessary, to show, that you cannot get a title to my property by a purchase, no matter how high your faith, from one who has no authority from me, real or apparent, to sell it.
But the defendant here has not the ground of assumed agency to occupy. Roberts assumed to be the owner, not the agent of any one. He sold the spirits as his own. It is conceded he was not the owner. Is the defendant, then, in any better position that he bought the plaintiff’s property from a third person who pretended no authority from the owner to sell it %
The real ground, as stated by the court below in its oral decision, is, “ that when one of two innocent persons must suffer from the wrongful act of a third, the loss shall fall on him who has enabled such third person to commit the wrong.”
Ho case can be found, I think, that carries that rule to such an extent as is here claimed. If it can, it belongs to him who asserts it to produce the authority. The counsel for the respondent has produced none. 1
Ho man can transfer title to another’s property unless the owner has clothed him with authority, real or apparent, to do so—has given him authority to act as agent or as owner. Roberts had neither from the sellers. (Ballard v. Burgett, 40 N. Y., 314, Cond’l Sale.)
■ The plaintiff clothed Roberts with no power, real or apparent. Under the facts, his taking the whisky at the depot *618 was tortious. Plaintiff never trusted Mm with, the possession. The sellers never trusted him with the whisky. They sent it to defendant himself, addressed to him, with their own names . and place of business marked on the casks, and they took a receipt from the railroad for it thus addressed. The name of Roberts was not upon the casks or named anywhere in the papers. He had no apparent' right to that whisky by any act of the sellers. Upon the contrary, this whole fraud was the fraud of Roberts, and in no manner connected with or empowered by plaintiff. He produced an invoice from “ Lewis & Co.” to defendant, who it is not claimed had any pretence of right to it, and Roberts assumed to own the whisky to which he had been given no color of right by plaintiff. He was not even a bailee. If .this title can be sustained in defendant, then any bailee for Mm or otherwise can. transfer a good title. . ■
• If Roberts had Mred a horse for a week, taken possession of him, and while thus possessing and using him had sold him to the defendant, no one would pretend , that defendant would acquire, any title by such sale, no matter what he paid, nor if paid in good faith. ,
Further than this, if Roberts had contracted for the purchase of a horse, to be his only after the price was paid, and he had taken possession under that contract, the title not passing till payment, it is settled that he could convey no title to a bona fide purchaser, simply because he had no title to convey, and, as a general rule, a man can convey no better title than he has. (Ballard v. Burgett, 40 N. Y., 314.)
Where one obtains goods by false pretences, he can convey a good title to a bona fide purchaser, because he had a voidable title. The owner intended to convey the title to the defrauder. He may affirm the sale.. Until' the sale: be disaffirmed, and while the fraudulent vendee has possession, he may give a good title. There the reason is plain as. to which of the two innocent persons (the original vendor or the bona fide purchaser) must suffer, by the wrongful act of the third. (Story on Sales, § 200, and cases.)
*619 So, where an agent has an apparent authority to the public, though not in reality, as between him and Ms principal, the title passes to a bona fide purchaser.
Again, the sellers here were guilty of no negligence in the business, if mere negligence can deprive them of title to their property. They sent goods to defendant in the usual and proper mode, at the request of a neighbor of defendant, assuming to give a message for him. There, is notMng unusual or negligent in that.
On the other side, the facts, show that the defendant was never deceived by any act or statement of the plaintiff. He was a confiding, not a cautious, buyer. He paid no heed to the rule, caveat emptor / a healthy rule, that promotes good morals and common honesty. I do not mean that defendant was dishonest in tMs purchase. Doubtless, he had entire faith in Roberts and was deceived. He knew Roberts as Ms neighbor, keeping a grocery at Jamaica, like Mmself, and is told by him that he is running a distillery in Brooklyn, but not in his own name, for reasons he does not disclose." A careful man would have had notice of wrong, by the fact that he was doing business in another’s name in a near city.
The names of the real owners on the casks, then, would excite no curiosity—give no notice of the plaintiff’s right. The invoice and the railroad books, showing they took them from plaintiff for defendant, might be looked at in the same light by the defendant. That the names of the sellers were marked on these casks, with their place of business, is found as a fact. The defendant’s saying that they were not so'marked, “to the best of Ms knowledge and belief,” cannot erase or change the marks.
But the facts show that the defendant trusted the plaintiffs in nothing—relied upon them in nothing—was deceived by plaintiffs in notMng.; but he believed entirely in Roberts; he did not look for marks of other owners. If seen, they were not heeded, because of his faith in Roberts. Defendant was told that the distillery was in another’s name. Hence, marks of others, as owners, on the barrels did not surprise Mm.
*620 Defendant can only blame bis own credulity.
The plaintiff can say, with much more ground, that defendant enabled this fraud to be committed; he buys blindly from one who tells him he is dealing under false names; and plaintiff finds that defendant’s act warranted Eoberts’ statement that he was buying for defendant. Defendant receives the goods without knowing or inquiring from whom they come. Such is his statement. It was clearly the duty of the defendant to examine the property bought under such circumstances. Ordinary care would have known the freight bill by the railroad; and if from some person other than Eoberts. As it was, he should have gone further. Otherwise, he-bought at his peril.
The respondent insists that no conversion was proved. Such a point seems nowhere to have been taken before. But it was clearly otherwise. The testimony was concurrent from both sides, to the effect that plaintiff demanded pay for this whisky. Defendant admits its receipt, but denies plaintiff’s right; insists he bought from Eoberts, and paid him as the owner; also that none of the barrels are then there; that it was all disposed of. There is not an element of estoppel in the facts against the plaintiff.
It is claimed that this action will not lie; that it should have been trover. Ho question's to the pleadings was raised at the trial, and none should be entertained here.
I think the action well lies; that the plaintiff may waive the tort, and have assumpsit where the party has appropriated the property. (Osborn v. Bell, 5 Den., 370-374; Cummings v. Vorce, 3 Hill, 282; Wigand v. Sichel, 3 Keyes, 120; 2 Green. Ev., § 108, and cases cited.)
The judgment must be reversed, new trial granted, costs to abide event.
Church, Ch. J., Andrews and Grover, JJ., concur.
Allen, Eapallo and Folger, JJ., dissent; Folger, J., holding that an action on contract would not lie, but that plaintiff might recover in a proper action.