Midland Railroad Co. v. Hitchcock.

---

The Midland Railroad Company of New Jersey,
appellant,

*v.*

Anna L. Hitchcock, Charles Parsons et al., respondents.

1. A company giving a written certificate that a person named is entitled to a bond about to be issued by such company, is estopped from denying the truth of such statement in favor of a person who, in good faith, has changed his position in reliance on such certificate.

2. So far as such parties are concerned, it does not matter whether the certificate so given be negotiable or not.

3. The delivery of a non-negotiable instrument to a bailee for the purpose of transmitting it to a third party, does not so clothe such bailee with the *indicia* of title as to give validity to a fraudulent transfer of such instrument.

4. Certain persons projected the formation of a new railroad company, founded on a foreclosure sale of a railroad company already existing, and published a scheme of re-organization, and it directed the holders of first-mortgage bonds, who wished to join in such re-organization, to deposit their bonds with the Central Trust Company of New York, and appointed a permanent committee, having a president and secretary, with a place of business in New York city. A bondholder presented his bond to the Central Trust Company, but, on account of some irregularity in it, was referred to the committee above referred to. The president and secretary of such committee accepted the bond.—*Held,* that such acceptance bound the new company, the committee having been held out to the public as its general agent in the business of organizing the new company.

Bill of interpleader.

The bill shows the corporate existence of the New Jersey Midland Railway Company and the issue by it of certain bonds, secured by a mortgage to trustees, the default in the payment of the moneys so secured, and a foreclosure by the trustees to recover the same; that pending such suit a committee of trustees was formed, on behalf of the holders of such mortgage bonds, and for protecting the interest of such of them as should accept and comply with the terms of a plan or scheme promulgated by said committee for purchasing and re-organizing a company for operating said railroad; that, among other things, the plan so promulgated contained a provision that there should be issued to the holders of the present first-mortgage bonds new bonds, dollar for dollar &c., and provision seventh was as follows, viz. :

"All first-mortgage bondholders desirous of participating in the purchase of the road at the foreclosure sale, to deposit their bonds with the *Central Trust Company,* on or before December 31st next, together with one-quarter of one per cent. on the amount of said bonds, in cash, for defraying the costs of foreclosure and expenses incident thereto, taking the receipt of said company therefor, countersigned by the representative of the permanent committee to be hereafter appointed to perfect such re-organization, in such form as they shall determine."

Accompanying the publication of such scheme was a notice of the names of the permanent committee of re-organization, of which D. B. Halstead was president, and H. P. Dechert was secretary, and that the office of such trustees was 138 Chambers street, New York city; that the mortgaged premises were sold under foreclosure and were purchased on behalf of said committee, and a new corporation for operating said railroad was organized, under the name of The Midland Railroad of New Jersey, being the complainant; that said complainant caused a mortgage to be executed to secure said original first-mortgage bonds, and that among said bonds is one for $1,000, designated as No. 588, and which latter bond is held by complainant to be delivered to the lawful owner of bond No. 235 of the said The New Jersey Midland Railway Company, and that Anna L. Hitchcock and Charles Parsons severally claim to be the owner thereof.

Mrs. Hitchcock and Mr. Parsons interplead severally, setting forth their claims to the bond in question. It thus appeared that Mrs. Hitchcock was the owner of bond No. 235, and which is represented by the bond No. 588 of the new company, being the bond in dispute; that being willing to come in under the new scheme she sent such original bond to the office of the Central Trust Company, the officers of which company informed Mrs. Hitchcock's agent that they could not accept it because two coupons were missing, and they sent such agent to the president and secretary of the committee; that such agent accordingly called at the office of the committee, and that he saw the president thereof, who told him to go to the secretary and say to him that the bond was all right, and that if he would not accept it to bring it back, and that he, the president, would accept it himself; that thereupon he took the bond to the secretary, Dechert, who accepted it and gave him the receipt of the committee therefor; that Dechert subsequently took the bond so received by him to the trust company and fraudulently representing himself as the owner of the same, obtained a certificate in his own name, and which certificate was transferable by endorsement. He afterwards sold such certificate, in the New York market, to a *bona*

*fide* purchaser, and after sundry mesne assignments it came to the other claimant, Parsons.

On appeal from a decree advised by Vice-Chancellor Van Fleet, whose opinion is as follows :

There is no dispute that Mrs. Hitchcock was the owner, originally, of the bond which the stock and bond now in dispute represent. . The important question is, Has she lost her title ? She has not voluntarily parted with it; if she has been divested of it, such divestiture has been effected against her will. It is certain Dechert acquired no title against her by depositing her bond with the trust company as his and taking a certificate in his own name. As against her his act was fraud, and incapable, therefore, of conferring title on him.

Dechert sold the certificate, which he fraudulently procured to be issued to himself by the trust company, to a *bona fide* purchaser for value. The thing sold was the certificate, not the bond. When the owner of the bond deposited it with the trust company under the re-organization scheme, she lost all right to its possession, or to control it, except in accordance with the scheme for re-organization. In case the scheme was carried out, she was not entitled to this bond, but to a new bond and certain stock. Now, does Dechert's vendee, in virtue of his character as a *bona fide* purchaser for value, occupy a stronger position or stand in a better title, as against Mrs. Hitchcock, than that which Dechert held or had ? As a general rule, a vendee simply gets the title of his vendor. The assignee of a non-negotiable chose in action merely gets the title of his assignor—he stands in the shoes of his assignor, and gets what he had and nothing more. A more liberal rule prevails in respect to commercial paper and certain other negotiable choses in action. The purchaser of such instruments, if he purchase before maturity or dishonor, and is free from fraud, gets a valid title though his vendor has not even the shadow of a title. But this certificate is not a negotiable instrument—it possesses none of the qualities or characteristics of such paper. It simply represents that Dechert had, on behalf of the trustees, appointed by the bondholders to carry into effect a

scheme that had been devised for the re-organization of the Midland Railway Company, deposited certain first-mortgage bonds with the trust company for the purpose of entitling their owner to the benefit of the re-organization scheme. The certificate does not even represent Dechert as the owner of the bonds, but simply says that he has deposited them on behalf of the trustees. I am not familiar with any rule of law which entitles the purchaser of such a paper, though he purchased it innocently and paid the full market value of the bonds mentioned in it, to a judicial declaration that by its purchase he acquired a title to the bonds superior to that of their real owner.

The certificate carried notice on its face that the bonds had been dishonored. It states that the mortgage given to secure their payment was in process of foreclosure, and that a scheme was in course of execution to purchase the road in the interest of the bondholders.

I am unable to discover anything in the evidence which shows that Mrs. Hitchcock has done, said or omitted to do anything which can be made the basis of an estoppel against her. She is entitled to a decree that the bond and stock in controversy be issued and delivered to her, and also that she recover the costs of the suit against the defendant Charles Parsons.

*Mr. D. H. Chamberlin,* of Maine, for appellants.

*Mr. Geo. R. Dutton,* for respondent.

The opinion of the court was delivered by

BEASLEY, C. J.

If this were a controversy pertaining exclusively to the affairs of the Midland Railway Company, on the one side, and of Mr. Parsons, on the other, there would be no doubt that upon the facts, as they have been manifested, the latter would be entitled to the judgment of the court in his favor. Nor would such result be at all dependent on the question which has been so much discussed, whether the certificate of deposit be of a negotiable

nature or not. As between the two contestants just designated, such circumstance appears to be utterly unessential. It is shown that the Midland company, by its agent, the Central Trust Company, gave a writing to this man Dechert, certifying that he had deposited the bond mentioned, and that he or his assigns would be entitled to the corresponding bond to be thereafter issued; and that third parties, Mr. Parsons being one of them, acting on the ground of such certificate, in good faith, paid full value therefor. By force of the circumstances, it is plain that the Midland company must, in some form, be answerable to Mr. Parsons, if, in any wise, he should come to loss by reason of the written statement of the company. On this branch of the case, viewed in this restricted light, a palpable case of an estoppel *in pais* against the complainant would be presented. In the presence of such a posture of affairs, it is not worth while to pause to inquire whether the certificate in question has transmissibility, in a commercial sense, attached to it, or whether it is to be ranked as an ordinary chose in action. If A certifies that B is the owner of a chose in action, and C parts with his money, having the right to rely on such certificate, and in point of fact does so, as between A and C, the law conclusively presumes that B is the owner of the property embraced in the certificate. To such a claim on the part of Mr. Parsons, it is no answer at all for the company to say that its agent was deceived by Dechert into giving such a certificate, for the conclusive reply to such a position is that the certificate was given ; that its natural effect was to mislead innocent parties, and that this contestant was so misled. In such a situation, if both of these parties are to be regarded as free from blame and equally innocent, then the loss, if any ensues, must be borne by the company, through whose act it has arisen. Looking at these two parties alone, and applying admitted rules of law to the facts, I should conclude that Mr. Parsons's title to the bond in question was incontestable.

But there is another side to the case.

Mrs. Hitchcock was the owner of the original bond, which was delivered up and which is now represented by bond No. 588, and which is the subject of dispute. By the delivery of

such original bond in pursuance of the scheme of re-organization, she became entitled to the corresponding bond of the re-issue. The new company was never the owner, even for an instant, of such newly-issued bond. By force of the act of the legislature regulating this subject, the nascent corporation is required to issue its bonds in conformity with the plan of re-organization, so that by the act of issuing them the original bonds are transfigured into their substitutes, and the sequence of title remains unbroken. Consequently, by the surrender of her bond, Mrs. Hitchcock became the owner of the bond in controversy, and the only debatable question is, whether she has lost her title, or what is the same thing, her right to assert such title, by her own conduct.

The ground taken on this subject in the learned and ingenious argument contained in the brief of the counsel of Mr. Parsons, who is the appellant in this proceeding, was that Mrs. Hitchcock, by the negligence of her agent in delivering her bond to Dechert instead of to the Central Trust Company, thereby made Dechert her agent and enabled him to perpetrate the fraud that has resulted in this litigation.

This position is obviously based on two assumptions: First, that Dechert, when he passed the bonds to the trust company as his own, and thereby procured the certificate of deposit to be made to himself, was the agent of Mrs. Hitchcock ; and, second, that the latter litigant had clothed him with an apparent title to such bond, and had by such conduct laid the way for the accomplishment of the deceit practiced by him.

Neither of these contentions can, in my opinion, be sustained. My conclusion from the evidence is, that the bond in question was delivered, according to necessary legal intendment, to Dechert as the authorized officer of the committee or board of trustees, and not to him to act in the capacity of the private agent of Mrs. Hitchcock. On this head the proofs disclose this state of facts : The committee just mentioned was the permanent board of trustees for the projectors of the new company ; it had a president, secretary and place of business in the city of New York, of which condition of things it gave notice to the public ; the husband of Mrs. Hitchcock, in her behalf, took her bond to the

Central Trust Company, in accordance with the promulgated scheme of re-organization, and was informed by the officers of that institution that they could not accept it because two coupons were missing, but sent Mr. Hitchcock to the chairman and secretary of the committee; in accordance with that instruction, the bond was taken to the president of the committee, who directed that it should be taken to the secretary, Mr. Dechert, with the statement that the bond was all right, and that if the secretary would not accept it to bring it back to him and he would accept it himself.   Under these circumstances, the instrument was received by the secretary, who gave in return, in his official capacity, the receipt of the committee.   These facts I conceive to be incontestably proved, for the mere failure of remembrance on the part of the president of the committee cannot impair the direct and affirmative testimony of Mr. Hitchcock, supported, as such testimony is, by the receipt given by the secretary at the time of the transaction.

It further appears by the testimony of one of the officers of the Central Trust Company that when irregularities in the bonds which were offered to them in this business, such as a bond with missing coupons, occurred, it was the practice to refer such cases to the general committee, and it was not shown that the right of the committee to act in such matters was at any time drawn in question.

In view of such a. condition of matters, it appears to me that this committee or board of trustees was held out to the public as the general agent of the projectors of the new company in the affair of its re-organization.   It is not to be denied that at the time this business was transacting, the board and its officers thought themselves possesssed of such power—that is, of a power to deviate from the form of the scheme of organization in order to carry into effect its substantial intents.   I think it quite unreasonable to assume that this board was not held out as being clothed with authority to intervene in such a matter as was presented in the instance of this bond being destitute of some of its coupons.   That the officers of the trust company so understood the position of the committee is certain.   The president and sec-

retary of the committee had the same view, and Mr. Hitchcock, from the attitude of the committee before the public, had the right to come to the same conclusion. From this conclusion, it would result that the bond in question was, in point of fact, surrendered duly to the projectors of the new company, and that by force of such surrender Mrs. Hitchcock became irrevocably entitled to the new bond that was to be substituted in the stead of the instrument thus given up. Such substituted bond was not the property of the projectors or of the new company, and consequently the title to it could not be impaired or affected by any certificate which such projectors or such company might execute. From this view, the result is that when Dechert palmed off that bond as his own upon the trust company and obtained the certificate in question, Mrs. Hitchcock was in no wise responsible for such misconduct, as in that business he was not acting in her behalf.

Nor, as I have said, is the second postulate of the argument in behalf of the appellant sustained by the proofs. That postulate is that Mrs. Hitchcock, by passing the original bond to Dechert as her agent, put it in his power to commit the deception by means of which he obtained the illusory certificate from the trust company. It is urged that the original bond, being negotiable by delivery at the time it was left with Dechert, imported a title to it in the holder, and that the Central Trust Company had the right to take it without inquiry, and that the owner of the instrument must bear the loss resulting from her misplaced confidence. In support of this position a number of authorities are referred to, which are to the effect that when an agent is invested by the owner of property with the *indicia* of title to it, and a third person is misled by such indications, and, in good faith, becomes the purchaser of such property, the law will validate the transfer made by force of such ostensible ownership. The legal doctrine thus appealed to is not to be called in question, but it is not applicable to the present juncture, as the facts which must form its basis are not present. It is not true that when Mrs. Hitchcock entrusted this instrument to Dechert, and when he passed it to the trust company, it was negotiable, for, beyond

all question, as I think, it must be taken, with respect to the persons thus dealing with it, to have been then past due and dishonored. By this is meant not only that the coupons were unpaid, but that the principal moneys secured by the obligation were likewise unpaid. It is true that the bond in question did not contain a provision that in case of default in the punctual payment of interest, the principal should become due and payable, a condition to that effect being embraced in the mortgage given to the trustees securing this class of bonds; and it therefore may well be that a person who had taken one of such instruments in reliance on its own constitution, and in ignorance of the constitution of the mortgage, would not have been affected by the fact that by force of such condition in the latter instrument the principal of such bond had become due and was in arrear. But the parties to the transaction under consideration cannot occupy such a position, for they were all fully apprised of the circumstance that the mortgage alluded to was being foreclosed, and that the decree in that proceeding would embrace the money evidenced by this bond. The projectors of the new company, who were the parties receiving, through their agent, this bond from the hands of Dechert, had associated themselves in the plan of purchasing at the sale, by virtue of the decree just mentioned, the whole of the property and corporate rights of the primary company, and, standing in that attitude, it is out of the question to permit them to aver that they had the right to treat this instrument as undishonored and as still possessed of its original negotiability. The consequence is, that when the trust company, under their agency for that purpose, took this bond from Dechert, it dealt with uncommercial paper, and when it gave him the certificate of deposit it assumed the risk of his ownership. Mrs. Hitchcock has done nothing to forfeit or impair her rights. Assuming Dechert to have been her agent in the conveyance of the bond to the trust company, she had not, in that transaction, invested him with the *indicia* of ownership, for she had merely put in his possession, for the purpose of transmission, a non-negotiable instrument. Mere delivery of a chose in action of this kind, or of personal property, for the purpose

of carriage, does not clothe such bailee with an apparent title, which, if passed away, will defeat the right of the true owner. "Simply entrusting the possession of a chattel to another as depositary, pledgee or other bailee, or even under a conditional executory contract of sale," says the court of errors of New York, "is clearly insufficient to preclude the real owner from reclaiming his property, in case of an unauthorized disposition of it by the person so entrusted. *Ballard* v. *Burgett, 40 N. Y. 314.* "The mere possession of chattels, by whatever means acquired, if there be no other evidence of property or authority to sell from the true owner, will not enable the possessor to give a good title." *McNeil* v. *Tenth National Bank, 46 N. Y. 325.*

The result is that even on the assumption that Dechert is to be deemed to have been the agent of Mrs. Hitchcock in this business, nevertheless, as she did not impart to him, in any legal sense, the appearance of being the owner of this instrument, she has done no act that can estop her from setting up her claim to the bond in dispute.

The decree should be affirmed.

DEPUE, J.

I am not prepared to assent to the view that Mrs. Hitchcock's bond ceased to be negotiable by reason of the proceedings which were taken for a re-organization of the company.

I think Dechert was the agent of the committee, and not of Mrs. Hitchcock, when he received the bond, and that the certificate issued by the trust company to Dechert was not a negotiable instrument. *Knapp* v. *Mayor of Hoboken, 9 Vr. 371; 10 Id. 394.* Neither the committee nor the trust company had power to make paper of this character negotiable. The only authority either had was to give receipts for bonds presented under the plan of re-organization. I think also that Mrs. Hitchcock is not estopped from denying the right of the holder of the certificate to have the new bonds and stock issued to him.

On these grounds I vote to affirm. In this opinion Justices VAN SYCKEL, DIXON and MAGIE concur.

*Decree unanimously affirmed.*